**STATE of Missouri, Respondent,**

v.

**Jessie BRITTAIN, Appellant.**

**Jessie BRITTAIN, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 64180, 65703.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 21, 1995.

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant, Jessie Brittain, appeals after sentencing in accord with a verdict of guilty. The jury found defendant guilty of second-degree murder in violation of § 565.021 RSMo 1986. He was sentenced to a term of thirty years imprisonment. Defendant filed *pro se* and amended motions seeking post-conviction relief pursuant to Rule 29.15. The motion court denied the motions without an evidentiary hearing. This consolidated appeal follows. We affirm.

Viewed in the light most favorable to the verdict, the evidence presented to the jury was as follows. On April 5, 1992, defendant was living with Martha Koenig in an apartment at 3706 South Broadway in the City of St. Louis. Koenig's daughter, Tina West, was staying with them for a week-long visit. That day, defendant and Koenig went to a barbecue in their neighborhood at the home of Mary Bounds. Defendant's son, Donnie Brittain, and some neighbors were there. The individuals involved were all consuming beer in large quantities at the barbecue. It ended at about 7:00 p.m. Approximately an hour later, defendant, Koenig, Bounds, Bounds' four-year-old son, and Donnie Brittain all went to the Oasis Tavern at Cherokee and California. They consumed more alcoholic beverages. They left at approximately 1:00 a.m. the next morning, April 6, 1992. The group then got something to eat at a Zipps restaurant before they returned to the apartment complex.

Meanwhile, Tina, who was already at the apartment, noticed her mother returned home approximately 20 to 30 minutes before defendant. When he arrived, defendant and Koenig began to argue. Tina saw defendant strike Koenig with the palm of his hand. Tina then went to Bounds' apartment to bring her back to the apartment where Tina was staying with defendant and Koenig. Bounds went into the back bedroom of the apartment where she found defendant arguing with Koenig. Bounds heard a "hit" and saw Koenig fall off the bed and strike her head on a window ledge as she fell to the floor. Defendant continued arguing with Koenig, telling her to give him rent money. Koenig repeatedly told him no. She said something about having bought a van and she could not pay defendant all at one time for the rent.

Bounds told Tina to get Donnie Brittain, who was passed out from intoxication at Bounds' apartment. Tina left but returned alone. She told Bounds she could not rouse Donnie Brittain. Bounds and Tina left together, got Donnie Brittain up, and returned with him. This took about five minutes. Bounds and Donnie Brittain went into the apartment, while Tina waited outside. Defendant saw them and told them they had no right to walk into his house. Bounds then heard a "hit" and saw Koenig slam head-first into some double closet doors and then fall to the floor. Koenig then lost consciousness.

Defendant continued to tell Koenig to give him his money. Defendant kicked Koenig in the head. He was "ranting and raving" about the money. He then punched Koenig in the head, while she was still unconscious, and again demanded payment. Defendant rolled Koenig over, took her wallet, and said he was going to find "it." Defendant took cards and pictures out of Koenig's wallet and threw them about the room. He did not find money. He threw the wallet on the floor and kicked Koenig in the head again.

Donnie Brittain told defendant that Koenig had had enough and defendant should leave her alone. Bounds tried to shield Koenig from defendant, so he could not kick her any longer. Bounds tried to wake the victim. She said, "[P]lease, Martha, wake up, please wake up, just give Jesse [sic] his money and I'll take you to my house. You won't have to come back over here." Koenig mumbled, "[W]allet." Bounds picked up the wallet, found the money in it, threw the money at defendant, and said, "[H]ere's your money."

Paramedics and police officers arrived at the scene. Koenig was removed in an ambulance, and defendant was arrested. At about 6:00 a.m. on April 6, 1992, Koenig was admitted to Saint Louis University Hospital. She was pronounced dead later that day. Her death was caused by an "apparent assault to head resulting in right subdural hematoma." Other injuries included two scrapes on the right side of her eye, discoloration of the right eye area, and bruises to the right arm joint and shoulder, chest at the right front, right elbow, back of the left hand, and the left side of the scalp.

A doctor testified that Koenig's injuries could have been sustained by a kick or blow to the head. In addition, he noted Koenig suffered from myasthenia gravis, a neuromuscular disorder and degenerative disease. Koenig also had a seizure disorder, for which she took Dilantin. Tina confirmed her mother had myasthenia gravis and frequent seizures and in fact would have two or three a night. She had fallen out of bed when having a seizure, although Tina did not see her fall to the floor in the past from a seizure.

At the conclusion of the state's case, the state made a motion to introduce new evidence that was brought to its attention. Specifically, defendant's ex-wife could testify he admitted injuring Koenig. The motion was rejected. However, the court indicated it would allow the state to introduce this evidence on rebuttal. Defendant contended the state should not be allowed to use this evidence in any phase, including rebuttal. The court did not change its position. Defendant did not call any witnesses or testify on his behalf. Thus, the testimony in question was never offered as or admitted into evidence.

On October 18, 1993, defendant filed a *pro se* motion to vacate, set aside, or correct the judgment or sentence of the trial court pursuant to Rule 29.15. An amended Rule 29.15 motion was filed on December 23, 1993. The motion court filed Findings of Fact and Conclusions of Law that denied defendant's motion without an evidentiary hearing.

On appeal, defendant presents four claims of trial court error. In Point I, defendant claims the trial court erred in overruling his motion to preclude the surprise witness, defendant's ex-wife, from testifying, even in rebuttal, about a statement defendant purportedly made to her that he intended to and did kick Koenig to harm her. Defendant argues (1) the disclosure was extremely late, coming after the state's presentation of its case but before the defense case; (2) he could not possibly prepare to meet this evidence; (3) it caused a material change in defendant's strategy and defense, essentially depriving defendant of any defense; and (4) it chilled defendant's fifth amendment right to testify on his own behalf. Furthermore, defendant argues the state took unfair advantage of the situation to argue repeatedly that the evidence against defendant was uncontradicted.

The fact that the testimony in question was not presented to the jury is fatal to defendant's claim on appeal. A trial court's ruling on a motion in limine is interlocutory and is thus not appealable. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App. 1992). A ruling on evidence will be preserved only when it is made at trial at the time the evidence is offered. *Id.* For the issues raised in a motion in limine to be preserved for appeal, they must be raised at trial. *Id.* Defendant has failed to cite any authority to support his argument that he can have relief based on a ruling in limine concerning evidence that was neither offered nor admitted into evidence at his trial. Defendant may have chosen not to offer evidence because of the probability of facing his ex-wife's testimony. However, there was overwhelming evidence defendant beat and kicked Koenig. The testimony of an admission would not have proven an unproven fact. Point denied.

In defendant's second point, he claims the trial court plainly erred in not declaring a mistrial, *sua sponte*, when the prosecutor stated during closing argument the state's evidence was uncontradicted and defendant was a wife beater.

During the state's closing argument, the prosecutor made the following statements:

[Defendant] repeatedly kicked her. *Martha and the defendant weren't married but the defendant is just like a wife beater.*

\* \* \* \* \* \*

To discount Marty and Donnie's testimony, you have to call them a liar. There is no way around it. They came in here and they told you what they saw. *That evidence, folks, is totally uncontradicted.* That is the evidence, ladies and gentlemen, that you have.

\* \* \* \* \* \*

*Ladies and gentlemen, this case, as I said before, is, under the evidence, is uncontradicted that the defendant not only knocked her to the ground in the back bedroom but that Martha got up and somehow she was in the second—in the front bedroom [sic] when Marty finally got back with Donnie and that is when the defendant, after Martha had konked [sic] her head as a result of being hit by the defendant, konked [sic] her head on the windowsill.* (Our emphasis).

■ Defendant failed to object to these statements. · Defendant concedes he did not properly preserve this point for appeal; therefore we may review only for plain error. Rule 30.20. Defendant must prove an alleged error is of such magnitude that it constitutes plain error. *State v. Hunn,* 821 S.W.2d 866, 869 (Mo.App.1991). The assertion of plain error places a much greater burden on defendant than when he asserts prejudicial error. *Id.* A defendant must not only show prejudicial error resulted, he must further show the error so substantially affects his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.* at 870.

■ Plain error will seldom be found in unobjected closing argument. *State v. Kempker,* 824 S.W.2d 909, 911 (Mo. banc 1992). Relief should rarely be granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation. *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994). Furthermore, alleged errors committed in closing argument do not justify relief under the plain error rule unless they are determined to have had a decisive effect on the jury. *State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988).

■ The prosecutor did not argue defendant was a wife beater, a matter not proven. He argued defendant was "just like a wife beater," a matter that was proven. The courts frown on expressions of mere personal abuse unconnected with the evidence and also on personal opinions or beliefs of the prosecutor not formed from or justified by the evidence. *State v. Jackson,* 499 S.W.2d 467, 471 (Mo.1973). However, a prosecutor has the right to draw any reasonable inferences from the evidence he believes in good faith to be justified. *State v. Ward,* 745 S.W.2d 666, 672 (Mo. banc 1988). Name-calling is not per se prejudicial where there is evidence to support such a characterization. *State v. Clemmons,* 753 S.W.2d 901, 908 (Mo. banc 1988).

Here, the evidence showed the defendant and Koenig had a relationship, they lived together, and defendant beat Koenig, causing her death. The prosecutor made it very clear although defendant was not married to Koenig, his actions were "just like" those of a wife beater. This argument was supported by the evidence. In addition, given the overwhelming weight of the evidence against defendant, he cannot realistically argue this argument had a decisive effect on the result of his trial. Point denied.

■ The prosecutor also argued the evidence against defendant was "uncontradicted." Defendant claims the admission of such statements constituted plain error, because they were indirect comments on defendant's right not to testify. It is firmly embedded in the law that a prosecutor may not comment on a defendant's failure to testify. Rule 27.05; *Sidebottom,* 753 S.W.2d at 920. Rule 27.05 does not prohibit a prosecutor from making reference to the defendant's failure to offer evidence. *Sidebottom,* 753 S.W.2d at 920. It proscribes only direct and certain references to the accused's failure to testify. *Id.*

Here, during closing argument, the prosecutor made no direct references to defendant's failure to testify. Furthermore, it is well settled that a statement made during closing argument that the evidence was "uncontradicted" is permissible in cases where there is available evidence from sources disclosed to the jury that is not testimony of defendant. *See State v. Robinson,* 641 S.W.2d 423, 426 (Mo. banc 1982); *State v. Carpenter,* 710 S.W.2d 284, 285 (Mo.App. 1986); and *State v. Oldham,* 659 S.W.2d 285 (Mo.App.1983). Here, there were eye witnesses and the possibility of medical evidence to counter the proven cause of death. The argument was not an indirect, but certain, reference to the failure of defendant to testify. Accordingly, we find no error. Point denied.

In his third point, defendant claims the trial court erred in denying defendant's *pro se* and amended Rule 29.15 post-conviction motions without an evidentiary hearing, because he pleaded facts not refuted by the record that, if true, warranted relief. In support of this, he presents two sub-points. First, he claims counsel was ineffective for failing to adequately cross-examine and impeach with inconsistent statements the state's chief accuser and key witness, Marty Bounds, who testified to the blows that caused Koenig's death. Second, defendant argues counsel was ineffective for failing to call witnesses who would have testified to having seen Koenig fall to the ground during past seizure attacks, which would have refuted state witness' testimony to the contrary, supporting defense arguments that a fall during a seizure caused the fatal injuries.

Defendant's *pro se* motion alleged numerous grounds for relief. The amended motion incorporated the *pro se* motion and specified or amplified two grounds: (1) failure to call witnesses to testify to having observed Koenig suffering a seizure and falling in the past and (2) failure to depose or otherwise adequately prepare to cross-examine Marty Bounds with regard to inconsistencies in her testimony at trial.

Our review of the denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *State v. Ervin,* 835 S.W.2d 905, 928 (Mo. banc 1992). The motion court's findings are clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression a mistake has been made. *Id.* To be entitled to an evidentiary hearing, a movant must (1) allege facts, not conclusions, which, if true, would entitle movant to relief; (2) allege factual allegations not refuted by the record; and (3) allege matters which caused prejudice to the movant. *State v. Blankenship,* 830 S.W.2d 1, 16 (Mo. banc 1992). An evidentiary hearing is not required if the motion court determines the motion and the files and records of the case conclusively show the movant is entitled to no relief. Rule 29.15(g). In addition, to establish ineffective assistance of counsel, a movant must establish two separate elements: (1) his attorney failed to conform his representation to the degree of skill, care, and diligence of a reasonably competent attorney under similar circumstances, and (2) he was prejudiced thereby. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

First, defendant relies on trial counsel's failure to call witnesses who allegedly would have testified as to Koenig's having suffered seizures and fallen in the past. The motion court made the following findings:

9. Paragraph 5(h) complains that counsel failed to investigate and offer evidence that the victim's seizure disorder, and not Movant's conduct, caused the victim's death. The allegation is devoid of facts which would have been discovered had such investigation been conducted, and is also devoid of what evidence was available which would have supported this theory.

Similar points were also raised in Paragraph 5(j) and in the amended motion, Paragraph 11(A), as trial counsel's failure to subpoena and call "key defense witnesses" at trial. Movant alleges that had two named witnesses been called, they would have testified that they had seen the victim fall as the result of seizures. However, Movant has not alleged that the victim's seizure disorder affected her on the date of her death, nor that there is evi-

dence that she was suffering a seizure during Movant's attack on her. In other words, Movant has failed to demonstrate the relevance of this testimony. Absent such direct relevance, i.e., that the victim suffered a seizure at the time Movant is charged with having caused her death, the testimony of these two witnesses does not provide Movant with a defense.

In the amended motion, Movant acknowledges that trial counsel cross-examined the medical examiner as to whether the victim's injuries could have been the result of her seizure disorder, and argued the possibility of a seizure in closing argument. The evidence of the victim's disorder was clearly before the jury.

As a general rule, decisions regarding which witnesses to call are matters of trial strategy. See State v. Thompson, 835 S.W.2d 394, 400 (Mo.App.E.D.1992). Movant's allegations have failed to overcome the presumption that counsel's decision was sound trial strategy. Id.

 The motion court's findings are not clearly erroneous in this regard. As a general rule, the decision to call witnesses is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. State v. Fraction, 782 S.W.2d 764, 770 (Mo.App.1989). To support an allegation of ineffective assistance of counsel for failure to secure testimony of a defense witness, the defendant must allege facts to support proof the testimony of an alleged key witness would have helped him and what that testimony would have been. Id. We may assume the witnesses would have testified they had seen Koenig fall during seizures in the past. However, there is no allegation this would be connected to proof of death caused by the medical condition. There is no allegation Koenig had a seizure on the day at issue here. Moreover, as the motion court found, defense counsel cross-examined the state's medical expert on whether Koenig's injuries could have been caused by a fall from her seizure disorder; thus, evidence of Koenig's seizure disorder was before the jury. We find not only was defense counsel's decision not to call the two witnesses a matter of trial

strategy, but also it did not prejudice defendant.

 Defendant also contends his counsel was ineffective for failing to cross-examine and impeach Marty Bounds with alleged inconsistent statements. The motion court made the following findings on this issue:

11. Movant's next point addresses counsel's failure to depose State's witness, Marty Bounds.... Movant charges that Ms. Bounds provided several different versions of what occurred on the night of the victim's beating, and that had counsel deposed Ms. Bounds, counsel "would have had another version of her story, but under oath, to cross examine Ms. Bounds upon and further undermine whatever credibility she may have had with the jury."

Movant merely contends that counsel should have deposed Ms. Bounds in order to have a basis upon which to impeach her. There is no allegation that deposing this witness would have established a defense for Movant, nor that it would have created reasonable doubt. State v. Prowell, 834 S.W.2d 852, 857 (Mo.App.E.D.1992). While the decision in Prowell followed an evidentiary hearing, the Court concludes that Movant has failed to allege sufficient facts entitling him to a hearing in this case.

Furthermore, assuming that Ms. Bounds had provided several different versions of the event, and further assuming (as Movant alleges) that she "had trouble remembering what she previously told people," it is rank speculation that, had Ms. Bounds been deposed, her sworn deposition testimony would have been any different than her testimony under oath at trial. Movant's point is denied.

 The motion court did not clearly err when it denied the claim pertaining to Bounds. The decisions of trial counsel in terms of investigation are given great deference, and the decision whether to depose a witness is generally a matter of trial strategy. Ruff v. State, 815 S.W.2d 460, 464–466 (Mo.App.1991). Moreover, defendant's claim is defective because the allegations in his Rule 29.15 motions are conclusory and not factual. There is no allegation as to what

statements of Bounds would have come to light in a deposition or alternate cross-examination and how those statements could have caused the result of the proceeding to be different. Point denied.

Defendant's final claim of error concerns the reasonable doubt instruction. This matter has been consistently rejected on the authority of *State v. Griffin,* 848 S.W.2d 464 (Mo. banc 1993).

We affirm.

AHRENS, P.J., and SIMON, J., concur.