Michael MITCHEM, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 67270.

Missouri Court of Appeals,
Western District.

March 25, 2008.

As Modified May 27, 2008.

Susan L. Hogan, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Mitchem was convicted of first-degree murder, section 565.020,[1] and armed criminal action (ACA), section 571.015, af-ter a jury trial.[2] He was sentenced to life without parole on the murder conviction and a seventy-five year term on the ACA conviction. This court affirmed the convictions and sentences. Mr. Mitchem filed a timely *pro se* Rule 29.15 motion. The appointed post-conviction relief (PCR) counsel timely filed an amended motion. After an evidentiary hearing, the motion court denied relief. It issued findings of fact and conclusions of law on March 2, 2005. Mr. Mitchem did not appeal the denial.

On June 2, 2006, PCR counsel filed a motion to reopen the 29.15 proceedings for the sole purpose of reissuing the decision. She alleged that she abandoned Mr. Mitchem because she failed to file a timely appeal of the denial of his 29.15 motion. She claimed that she did not know that a judgment had been entered until she checked Missouri Case.net on May 30, 2006. She obtained a copy of the decision from the Office of Civil Records on May 31, 2006. Upon discovering that it was too late to file a notice of appeal and too late to request a special appeal[3] from this court, PCR counsel filed a motion to reopen. The motion court granted the motion and reissued its decision on June 30, 2006. Mr. Mitchem appeals the denial of his Rule 29.15 motion claiming trial counsel was ineffective for opening the door to otherwise inadmissible evidence of post-*Miranda*[4] warnings silence and for failing to object to closing arguments. Additionally, he claims that his appellate counsel was ineffective for failing to raise a *Batson*[5] challenge on direct appeal. We affirm the denial of his Rule 29.15 motion.

---

1. All Statutory references are to RSMo 2000.

2. Pertinent facts from the trial will be included in the legal discussion.

3. Rule 81.07(a) allows a party to file a notice of appeal with this court when the time limits under Rule 81.04(a) have expired.

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

## Legal Discussion

Before we can review the merits of this appeal, we must determine our jurisdiction. *See Wise v. State,* 219 S.W.3d 270, 273 (Mo.App. S.D.2007) (dismissing appeal of denial of post-conviction relief motion because the motion court lacked authority to reopen post-conviction proceedings). The State claims that we lack jurisdiction to hear the appeal because the motion court had no authority to reopen the case after the judgment became final.

 Usually, a motion court loses jurisdiction over a case thirty days after entering its judgment. *Id.* at 272. However, a motion court may reopen its proceedings in a 29.15 case on the ground that PCR counsel abandoned the movant. *Id.*; *Fenton v. State,* 200 S.W.3d 136, 139 (Mo. App. W.D.2006) (citing *State ex rel. Nixon v. Jaynes,* 63 S.W.3d 210, 217–18 (Mo. banc 2001)). The State concedes that if the reopening were valid, Mr. Mitchem's appeal would be timely from the 2006 judgment. Yet, the State insists that the 2005 judgment is the only valid decision, making the appeal "nearly a year and a half" late. Thus, the issue before us is whether PCR counsel's failure to file a timely appeal supports a finding of abandonment.

Missouri precedent has repeatedly held allegations of ineffectiveness of PCR counsel are not cognizable unless it amounts to abandonment. *See State v. Bradley,* 811 S.W.2d 379, 384 (Mo. banc 1991). The Missouri Supreme Court found abandonment when PCR counsel "took no action whatsoever on movant's behalf, thereby apparently failing to comply with the provisions of 29.15(e)." *Sanders v. State,* 807 S.W.2d 493, 494 (Mo. banc 1991) (citing *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991)). On that same day, the supreme court also found abandonment "where the record reflects that counsel has determined that there is a sound basis for amending the *pro se* motion but fails timely to file the amended motion as required by Rule 29.15(f)." *Id.* at 494–95. It appears that the supreme court found abandonment in both situations because PCR counsel's omission deprived the movant meaningful review of his claims. *Id.* at 494. Since 1991, the supreme court has declined to recognize other grounds for abandonment. *See Barnett v. State,* 103 S.W.3d 765, 774 (Mo. banc 2003). It has not decided whether failure to file a timely appeal constitutes abandonment since the promulgation of Rule 29.15.

Before 1991, the supreme court found that failure to prosecute the appeal of the denial of a Rule 27.26 [6] post-conviction relief motion where movant did not waive the appeal constituted abandonment. *Flowers v. State,* 618 S.W.2d 655, 657 (Mo. banc 1981). In *Fenton,* 200 S.W.3d at 139, the Western District held that PCR counsel's failure to file a timely appeal of the denial of a Rule 27.26 post-conviction motion constituted abandonment if the movant asked PCR counsel to file an appeal and PCR counsel failed to do so. The *Fenton* court relied on *Flowers.* [7] 200 S.W.3d at 139.

---

**6.** Rule 27.26 is the predecessor to Rules 29.15 and 24.035. *See Luster v. State,* 785 S.W.2d 103, 106 (Mo.App. W.D.1990).

**7.** Recently, the Eastern District of this court limited *Fenton* to Rule 27.26 motions and held that PCR counsel's failure to file an appeal was not abandonment. *Crenshaw v. State,* No. ED88500, 2007 WL 1052480, (Mo. App.2007) April 10, 2007, *transfer granted by*

Mo. S.Ct. on September 25, 2007. Instead, the *Crenshaw* court reasoned that PCR counsel's failure to file a timely appeal of a denial was ineffectiveness of counsel because the Missouri Supreme Court in *Barnett v. State,* 103 S.W.3d 765, 774 (Mo. banc 2003), found that abandonment only occurs in two situations, neither of which included an untimely

Both courts determined that PCR counsel's inaction constituted abandonment if the movant did not indicate that he did not wish to appeal or otherwise waive his right to an appeal.[8] *Flowers*, 618 S.W.2d at 657; *Fenton*, 200 S.W.3d at 139. Additionally, the past decisions were based on similar language found in Rule 29.15.

Applying the same reasoning, the failure to file a timely appeal of a denial of post-conviction relief under Rule 29.15(k) constitutes abandonment because it would forfeit the movant's right to appeal. Abandonment would not be found where the delay resulted from the movant's negligence or intentional conduct thereby waiving the right to appeal. In the motion to reopen, Mr. Mitchem alleged that he wanted an appeal from the denial and did not interfere with the filing of the appeal. He also alleged that the delay was due to PCR counsel's failure to monitor the docket to determine if the motion court had entered a judgment. The motion court implicitly adopted these allegations in its order when it found that PCR counsel abandoned Mr. Mitchem ·and granted the motion. Because the motion court found that Mr. Mitchem did not waive his appeal, the reopening of the Rule 29.15 proceedings by the motion court was valid. Therefore, we review the merits of Mr. Mitchem's appeal to determine whether the motion court clearly erred in its findings of fact and conclusions of law. *See Bradley*, 811 S.W.2d at 383. We will reverse the motion court if we are left with a firm and definite impression that a mistake has been made after reviewing the entire record. *Id.*

### Ineffectiveness of Trial Counsel

In his first point, Mr. Mitchem argues that trial counsel was ineffective because counsel opened the door for the State to ask him about "his post-arrest silence, even though defense counsel knew that [he] had refused to talk to the police and had invoked his right to remain silent." And he was thereby prejudiced because the jury "learned that [he] failed to deny involvement in the offense, when given an opportunity to do so by the police." To prevail on an ineffective assistance of counsel claim, Mr. Mitchem had to prove that his counsel's actions were not of a reasonably competent attorney and such deficiency prejudiced him. *Bucklew v. State*, 38 S.W.3d 395, 397 (Mo. banc 2001). It is presumed that trial counsel was competent and that his actions were the result of reasonable trial strategy. *Anderson v. State*, 66 S.W.3d 770, 775 (Mo.App. W.D. 2002). Prejudice is shown when there is a reasonable probability that the outcome would have been different but for trial counsel's deficient performance. *Bucklew*, 38 S.W.3d at 397.

At trial, the State adduced evidence that Mr. Mitchem beat the victim, Jamesetta Boles Pollard, to death with a hammer. Chase Blanchard, a medical examiner, testified that the victim died from multiple blunt force injuries to the head, which could have been caused by a hammer. Mr. Mitchem's friend, John Miley, testified for the State that he accompanied Mr. Mitchem to the victim's apartment so Mr.

appeal from a denial. *Crenshaw*, 2007 WL 1052480, at* 1–2.

**8.** Rule 27.26 expressly granted the movant the right to appeal the denial of post-conviction relief. *Fields v. State*, 572 S.W.2d 477, 478–80 n. 1 & 2 (Mo. banc 1978). Although Rule 29.15 is the successor to Rule 27.26, the express language granting the indigent movant the right to an appeal is not present in subsection (*k*) of 29.15. Nevertheless, case precedent repeatedly has interpreted Rule 29.15(*k*) to grant a right to movant to appeal the denial of post-conviction relief. *See Robinson v. State*, 854 S.W.2d 393 (Mo. banc 1993); *Echols v. State*, 168 S.W.3d 448, 454–55 (Mo.App. W.D.2005).

Mitchem could borrow her car. Mr. Mitchem had a hammer in his back pocket as they walked to her apartment. Ms. Boles allowed them inside of the apartment, and she and Mr. Mitchem went to her bedroom.

Mr. Miley waited in the living room but could hear arguing. Shortly thereafter, Mr. Miley heard a woman scream and several thumps. Mr. Mitchem joined Mr. Miley in the living room and told him to wait a minute. Mr. Mitchem then returned to the bedroom so Mr. Miley went to look for him. He noticed the victim had a bloody face and was situated between the bed and the wall. Mr. Mitchem was in her closet. Mr. Miley ran out of the apartment. Mr. Mitchem followed him and locked the victim's door wearing gloves. Mr. Mitchem also had a bloody towel in his hand with something wrapped in it. He threw something in the nearby woods but returned with the bloody towel. He had one key, and they used it to drive away in her car to Mr. Mitchem's apartment. Other witnesses testified that the victim's apartment door was locked, and that she was found with a bloody face between her bed and wall.

Mr. Mitchem changed his clothes and shoes because they had blood on them and placed them in a plastic bag. Mr. Mitchem then drove the car to his girlfriend's house, and Mr. Miley followed him in his own car. They spent a few hours with Mr. Mitchem's girlfriend and her friend in the victim's car. Mr. Mitchem and the friend returned to their apartment complex sometime in the early morning hours.

Janean Garrett, Mr. Mitchem's girlfriend, testified that Mr. Mitchem returned in the victim's car to her house and spent the night. His cousin, Marcus Harris, testified that Mr. Mitchem picked him up the next day driving the victim's car. He also testified that at the end of the day, Mr. Mitchem parked the car behind the apartment complex. Mark Woods, a police officer, testified he and his partner discovered the car less than a block from the apartment complex and found the car key on the ground near it. Mr. Harris also testified that Mr. Mitchem called him to ask if he had the car. When Mr. Harris replied that he did not have it, Mr. Mitchem told him that the police had the car because something bad happened in it. Kathleen Hentges, a fingerprint examiner, testified that Mr. Mitchem's fingerprints were found on the inside and outside of the victim's car.

Mr. Mitchem testified at trial that he neither knew the victim nor murdered her. However, he admitted driving her car. He claimed that he "rented it from some smoker." [9] Upon cross-examination, the State asked him if his testimony was the first time that he told his story about what happened. Mr. Mitchem replied that he had told his mother. Immediately thereafter, trial counsel objected and said, "I think it's proper to ask, Did you tell the police." The prosecutor then asked, "Did you tell the police you had rented the car?" Mr. Mitchem answered yes. Attempting to impeach Mr. Mitchem, the State asked him if he had seen the police report. Mr. Mitchem answered yes. The State repeated the question. Mr. Mitchem replied the report stated that he refused "to talk and sign a Miranda statement." Consequently, the State asked, "You refused to talk to the police?" Mr. Mitchem answered yes. The State asked him if his testimony was that he gave a statement

9. According to the testimony, a "smoker" is someone who rents his car to some random person for a bargained price; in "[a]ny smoker's car something probably bad happened."

even though he refused to talk. Mr. Mitchem replied the "police don't automatically write things down they are asking. They asked did I have a car. I said yes. They said, Would you like to go further, and I said no." Trial counsel did not object.

The motion court found against ineffective assistance of counsel because trial counsel had no grounds for an objection to the question that preceded Mr. Mitchem's non-responsive statement that he refused to speak with the police and failed to sign a *Miranda* waiver. Mr. Mitchem argues that this finding is erroneous because it overlooks "the fact that defense counsel told the court that he believed the [S]tate could ask Mr. Mitchem whether he 'told the police.'" We agree that trial counsel opened the door for the line of questioning that allowed the jurors to hear about his post-arrest silence.

 The State may not use the defendant's silence as either substantive evidence of guilt or for impeachment if the silence occurred after being arrested and informed of *Miranda* warnings because to do so violates due process. *State v. Wilder*, 946 S.W.2d 760, 764 (Mo.App. E.D. 1997). However, the prosecutor may use pre-*Miranda* warnings, post-arrest silence to impeach a defendant's testimony when "a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and defendant's silence is probative of inconsistencies in that testimony." *State v. Hill*, 823 S.W.2d 98, 101 (Mo.App. E.D.1991). Trial counsel is not ineffective for opening a door to evidence that the State is entitled to present. *Bucklew*, 38 S.W.3d at 401. We must determine whether the silence that the prosecutor asked about, through trial counsel's invitation, occurred before or after Mr. Mitchem was given *Miranda* warnings or presented with incriminating facts. *See*

*State v. Flynn*, 875 S.W.2d 931, 934–36 (Mo.App. S.D.1994).

It is clear from the record that the prosecutor sought to question Mr. Mitchem about post-*Miranda* warnings silence because he confronted Mr. Mitchem with the police investigative report to support the theory that Mr. Mitchem fabricated his story. The investigative report clearly states "Mr. Mitchem stated he did not wish to read his rights from the Miranda Waiver (Form 340 P.D.) therefore Detective Jefferson read Mr. Mitchem his rights. Mr. Mitchem stated he did not wish to speak to detectives about the murder." Thus, trial counsel erroneously invited the prosecutor to ask Mr. Mitchem whether "he told the police" because a reasonable and competent attorney would have understood that the State sought to use post-*Miranda* silence to impeach Mr. Mitchem's explanation for having the car, which was a violation of his rights.

 The State argues that this point should be denied because this court has ruled on the underlying claim as not being error, plain or otherwise. Missouri case law precludes a movant from prevailing on a claim of ineffective assistance of counsel-based errors, which the appellate court on direct appeal concluded did not prejudice the defendant. *Ringo v. State*, 120 S.W.3d 743, 746 (Mo. banc 2003). We determined on direct appeal that the trial court did not commit error, plain or otherwise, in "permitting the State's cross-examination and closing argument" and in not *sua sponte* declaring a mistrial because the State impeached him with the omission from the police report of any statement from him that he had rented the victim's car. We stated that the prosecutor could use the police report because Mr. Mitchem testified that he gave a voluntary statement to the police before *Miranda* warnings were given. Additionally, we found that Mr.

Mitchem injected the fact that he invoked his right to remain silent. After reviewing our memorandum decision affirming Mr. Mitchem's convictions and sentences, we are convinced that the decision does not hinder a claim of ineffectiveness for trial counsel's opening the door to otherwise inadmissible evidence.

■ Next, we must determine whether trial counsel's deficiency prejudiced Mr. Mitchem such that it affected his substantial rights. The use of post-*Miranda* silence to impeach a defendant's subsequent explanation is called a *Doyle*[10] violation. *State v. Dexter*, 954 S.W.2d 332, 337–38 (Mo. banc 1997). The test for determining plain error is whether the evidence had a decisive effect on the jury. *Id.* at 340. In determining whether the evidence had a decisive effect on the jury, we consider whether the State made repeated *Doyle* violations; whether the trial court made any curative effort; whether the defendant's exculpatory evidence is transparently frivolous; and whether the other evidence of the defendant's guilt is overwhelming. *Id.*

Mr. Mitchem argues that he was prejudiced because the jury was permitted to consider the fact that he asserted his right to remain silent and did not deny involvement when questioned by the police. Mr. Mitchem claims his "defense was not frivolous" and the State's evidence was not overwhelming because there was no confession and the two primary witnesses "were of questionable reliability." The eyewitness lived across the hall from Mr. Mitchem and only gave his statement to the police after he was threatened with having his children removed from his home. The other witness, who testified that Mr. Mitchem solicited him to kill the eyewitness while they were incarcerated together, was a convicted felon who had pending charges against him.

Although there was no confession, the State produced eyewitness testimony that Mr. Mitchem killed the victim. The evidence adduced about Mr. Miley's credibility was for the jury to decide. However, other witnesses and physical evidence at the crime scene corroborated the eyewitness's testimony. Additionally, evidence such as Mr. Mitchem's fingerprints and the presence of blood inside the victim's car corroborated the eyewitness's testimony. Mr. Mitchem's defense explains his fingerprints but does not negate the eyewitness's account. Moreover, Mr. Mitchem admitted to knowing the inmate through his cousin but denied that he asked the convicted felon to harm the eyewitness.

The prosecutor stated in his closing argument that Mr. Mitchem's story was incredible because the police would have written his statement in the report if he gave one. Nevertheless, because of the strong evidence against Mr. Mitchem, the exclusion of Mr. Mitchem's post-*Miranda* silence does not create a reasonable probability that the outcome would have been different but for trial counsel's deficient performance. Mr. Mitchem's first point is denied.

In his second point, Mr. Mitchem claims that the motion court erred in finding against ineffective assistance because trial counsel failed to object when the prosecutor referred to him as a liar during closing argument. To prove ineffectiveness for failing to object, Mr. Mitchem had to show that an objection would have been meritorious and the failure to object substantially deprived him of a fair trial. *Jackson v. State*, 205 S.W.3d 282, 288 (Mo.App. E.D. 2006). Trial counsel cannot be ineffective for failing to make a nonmeritorious objec-

---

10. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

tion. *Id.* On direct appeal, this court found there was no error, plain or otherwise, in allowing the prosecutor to refer to Mr. Mitchem as a liar and characterize his testimony as a lie, because the comments were reasonable inferences from the evidence. Because of this finding, Mr. Mitchem's second point is denied. *See Ringo,* 120 S.W.3d at 746 (holding counsel cannot be ineffective based on errors that the appellate court determined on direct appeal were not errors, plain or otherwise.).

### Ineffectiveness of Appellate Counsel

■ In the third and final point, Mr. Mitchem claims that the motion court erred in finding against ineffective assistance when appellate counsel failed to argue that the trial court erred in overruling trial counsel's *Batson* challenge.[11] To prevail on an ineffective assistance of appellate counsel claim, Mr. Mitchem must show that appellate counsel failed to raise an obvious claim that a competent and effective attorney would have raised, and that there is a reasonable probability that he would have prevailed on appeal had the issue been raised. *Williams v. State,* 168 S.W.3d 433, 444 (Mo. banc 2005).

Missouri requires compliance with the following procedures for a successful *Batson* challenge:

First, a defendant must challenge one or more specific venirepersons struck by the State and identify the cognizable racial group to which they belong. Second, the State must provide a race-neutral reason that is more than an unsubstantiated denial of discriminatory purpose. Third, the defense must show that the State's explanation was pretextual and the true reason for the strike was racial.

*State v. McFadden,* 191 S.W.3d 648, 651 (Mo. banc 2006)(footnotes omitted)(citing *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992)).

During jury selection, the prosecutor used one of its peremptory challenges to strike a black juror. Trial counsel objected and the trial court ordered the prosecutor to provide a race neutral-reason for striking the juror. The prosecutor stated that he struck the juror not because he was black but because he did not speak during voir dire and wore a tie with "WWJD" on it. According to the prosecutor, the imprint indicated to him that the juror was a fundamentalist Christian who was probably "not willing to sit in judgment of others." The prosecutor believed this, although the stricken juror did not

---

**11.** The State argues that Mr. Mitchem abandoned this point because "he failed to present testimony from appellate counsel at the evidentiary hearing to overcome the presumption of trial strategy," citing *Cole v. State,* 223 S.W.3d 927, 931–32 (Mo. App. S.D. 2007), for support. We disagree with *Cole* to the extent it holds a claim of ineffectiveness of appellate counsel is abandoned unless testimony concerning appellate counsel's strategy is presented to the motion court. We presume effectiveness of appellate counsel, so testimony concerning appellate counsel's strategy is not necessary. The presumption is overcome by showing that the claim of error is so obvious a reasonably competent attorney would have raised it and sufficiently serious to create a reasonable probability that the outcome of the appeal would have been different it were raised. *Anderson v. State,* 196 S.W.3d 28, 36 (Mo banc 2006). Mr. Mitchem submitted the appellant's brief from direct appeal to show that the claim was not raised, the motion for new trial to show the claim was preserved, and the transcript of the *voir dire* to show the alleged erroneous ruling of the trial court. Accordingly, we believe that Mr. Mitchem presented evidence sufficient to review the claim. *See Evans v. State,* 70 S.W.3d 483, 485–86 (Mo. App. W.D. 2002) (disregarding testimony of appellate strategy, this court dismissed the case because the transcript was not in the record and was necessary for review of the denial of ineffectiveness of appellate counsel claim).

answer when the State asked the venire panel if anyone would not be able to judge another for religious, philosophical, or moral reasons. Trial counsel did not challenge the explanation. The trial court initially found the reason was not race-neutral but changed its decision after the prosecutor stressed that a juror who wore his "religion on [his] sleeve" would not be able to judge another. Trial counsel did not challenge that explanation either.

The motion court found that the State gave a race-neutral reason and found against ineffectiveness of appellate counsel. Prosecutors may use past hunches for the basis of its preemptory challenges as long as the reasons are race-neutral and not "merely pretextual and ... racially motivated." *Parker*, 836 S.W.2d at 939, 939 n. 8. The prosecutor's reasoning was a hunch that was ultimately found to be race-neutral. Thus, there is no reasonable probability that Mr. Mitchem would have prevailed on direct appeal had the issue been raised. The motion court's ruling is not clearly erroneous. Mr. Mitchem's third point is denied.

### Conclusion

For the foregoing reasons, we affirm.

HAROLD L. LOWENSTEIN, P.J. and JOSEPH M. ELLIS, J. concur.