Carla Kay CLAY, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 70592.

Missouri Court of Appeals,
Western District.

May 11, 2010.

Timothy J. Forneris, St. Louis, MO, for appellant.

Shaun J. Mackelprang and James B. Farnsworth, Jefferson City, MO, for respondent.

Before Division One: KAREN KING MITCHELL, Presiding Judge, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

## CYNTHIA L. MARTIN, Judge.

Carla Clay appeals the motion court's judgment denying her Rule 29.15 motion for post-conviction relief after an evidentiary hearing. Clay was found guilty of two counts of first degree murder and sentenced to two terms of life imprisonment without the possibility of parole. Clay contends that the trial court erred in denying her motion for post-conviction relief because trial counsel was ineffective for failing to: (1) object to expert witness testimony; (2) file a motion to sever the two counts of murder in the first degree; and (3) depose Clay's father. We affirm.

### Factual and Procedural History[1]

On June 8, 2003, police officers received a phone call from Clay's home that a baby was not breathing. When the officers arrived, Clay was crying nearby. Clay told the officers that she had put her son, Randy, to bed the night before and when she checked on him the next morning, she found him lying on his back, arms extended, with a white, twenty-six inch teddy bear lying on top of him. Specifically, the bear's mouth was on Randy's face. The next day, the Child Fatality Review Board (CFRB) ruled the manner of death an accident, determining that the teddy bear had a collapsing nose that could form a three to five inch pocket over the face of the child. At the time of his death, Randy was 2 1/2–months old. Randy's pediatrician, Dr. Sayonara Mato, was out of town at the time of Randy's death and did not participate in the investigation of his death. When Dr. Mato learned of Randy's death, she was suspicious about the circumstances.

One year later, on June 21, 2004, police officers were again called to Clay's home because an infant was not breathing. When the officers arrived at the house, three women were outside and "fairly hysterical." Clay's daughter, Audrey, was limp, her eyes were closed, her skin was pale, her lips were blue, and she had no pulse. Efforts to resuscitate Audrey lasted for almost an hour but failed. Audrey's pediatrician, Dr. Mato, was called to the hospital. Dr. Mato noticed bruising on the bridge and tip of Audrey's nose. A search of the house was conducted and some pacifiers were seized. One green pacifier was still in its packaging. It was determined that Audrey's death was caused by mechanical asphyxia using an object, which obstructed her nose and mouth for a period of time causing lack of oxygen supply to the body and, ultimately, death. At the time of her death, Audrey was 1 1/2–months old.

---

1. The recited facts are drawn from the opinion disposing of Clay's direct appeal in *State v. Clay*, 225 S.W.3d 462 (Mo.App. W.D.2007), or are otherwise viewed in the light most favorable to the jury's verdict. *State v. Clark*, 280 S.W.3d 625, 627 (Mo.App. W.D.2008).

Approximately one month later, the coroner in Randy's death filed an affidavit to change the manner of death on Randy's death certificate to "homicide." Clay was charged with two counts of first degree murder. After a jury trial, Clay was found guilty of both counts and was sentenced to two terms of life imprisonment without eligibility for probation or parole. Clay's convictions were affirmed by this court on direct appeal. *Clay,* 225 S.W.3d at 463. Clay filed a Rule 29.15 motion for post-conviction relief. Appointed counsel then filed an amended Rule 29.15 motion. The trial court denied Clay's motion after an evidentiary hearing. Clay appeals.

### Standard of Review

Our review of the denial of Clay's Rule 29.15 motion is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *Peterson v. State,* 149 S.W.3d 583, 585 (Mo.App. W.D.2004). "The motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made." *Peterson,* 149 S.W.3d at 585.

### Analysis

Clay must prove by a preponderance of the evidence the two-pronged *Strickland* test in order to establish ineffective assistance of counsel: "(1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) that [Clay] was thereby prejudiced." *Haskett v. State,* 152 S.W.3d 906, 909 (Mo.App. W.D. 2005) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If Clay fails to demonstrate either prong of the *Strickland*

test, her post-conviction motion will be denied. *Id.*

To establish the performance prong, Clay bears a heavy burden and must overcome a strong presumption that her counsel provided competent assistance. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). Clay must demonstrate " 'that counsel's representation fell below an objective standard of reasonableness.' " *Id.* at 426 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). To demonstrate this, Clay "must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the 'court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.' " *Id.* (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). We judge the reasonableness of counsel's conduct based on the facts of each case. *Williams v. State,* 205 S.W.3d 300, 305 (Mo.App. W.D.2006).

To establish prejudice, Clay must show that there is a reasonable probability that but for her counsel's ineffectiveness, the result would have been different. *Patterson v. State,* 110 S.W.3d 896, 900 (Mo.App. W.D.2003). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (citations omitted). A showing of error that could have a conceivable effect on the outcome is insufficient. *Williams,* 205 S.W.3d at 305.

### Point I

■ In Clay's first point on appeal, Clay argues that the trial court clearly erred in denying post-conviction relief because trial counsel was ineffective for failing to object to Dr. Mato's expert opinion that a teddy bear falling on Randy's face did not explain his death. Clay contends there was insufficient foundation for this opinion because Dr. Mato only saw a photograph of

the bear, never physically saw the bear, and did not know its weight or composition. Clay claims this ineffective assistance of counsel prejudiced her because the jury "used the evidence of Dr. Mato's opinion as proof that Randy had to be suffocated because he was sufficiently developed and strong to move his head away from the bear if it has fallen upon him." The essence of Clay's claim is, therefore, that but for the absence of a proper foundation objection, the outcome of her trial would have been different. We disagree.

First, we question whether the specific argument raised on appeal has been preserved. In Clay's motion for post-conviction relief, Clay contends that "counsel failed to object on proper grounds to the admissibility of Dr. Mato's opinion at trial that Randy was of sufficient physiological development that he could have *pushed the bear off his face,* had it accidently fallen over on him as the defense claimed." Later in the post-conviction motion, Clay contends that trial counsel should have spelled out that Dr. Mato had no information with respect to the weight or composition of the bear to permit such an opinion. The trial court found that Dr. Mato described Randy's progress as excellent and testified that a 2 1/2–month old child should be able to *turn its head to either side* without trouble. The trial court found that Clay's post-conviction motion mischaracterized Dr. Mato's testimony as claiming Randy could have pushed the bear off of his face. Clay has "reframed" her claim of ineffective assistance of counsel on appeal and now contends that trial counsel failed to sufficiently object to the lack of foundation for Dr. Mato's testimony that Randy was sufficiently developed and strong to *move*

*his head away from the bear.* The allegation raised on appeal is materially different from the allegation raised in Clay's post-conviction motion. We do not review claims which were not raised in the post-conviction motion. *State v. Gray,* 926 S.W.2d 29, 34 (Mo.App. W.D.1996).

Even were we to reach the merits of Clay's claim, Clay would be unable to sustain her burden to demonstrate ineffective assistance of counsel. It is true that trial counsel's motion in limine (which claimed Dr. Mato's testimony was speculative) and trial counsel's objection at trial (which referenced the "previously filed motion in limine to lack of foundation") were very general. It is also true that on direct appeal, Clay's claim that there was insufficient foundation for Dr. Mato's testimony was unsuccessful because this court held that the argument raised on appeal that Dr. Mato had never seen the bear and had no knowledge of its weight was not preserved in Clay's trial objection.[2] *Clay,* 225 S.W.3d at 465. Though our finding in *Clay* might seem to support Clay's claims of ineffective assistance of counsel, to prove ineffective assistance for failing to properly object, Clay must show that the objection would have been meritorious and that the failure to object substantially deprived her of a fair trial. *Mitchem v. State,* 250 S.W.3d 749, 755 (Mo.App. W.D. 2008). Clay has done neither. Trial counsel is not ineffective for failing to make a nonmeritorious objection. *Id.* at 755–56. Here, had a specific foundation objection been made at trial, it is unlikely the objection would have been sustained, and/or it is unlikely the foundation necessary to overcome the objection could not have been laid.

---

**2.** Although Clay concedes that issues decided on direct appeal cannot be relitigated on a theory of ineffective assistance of counsel, she claims that the issue is properly raised be-

cause review was denied on direct appeal. We need not address this claim as Clay's point fails on the merits.

■ Dr. Mato testified in response to cross-examination by Clay's trial counsel that although she had never seen the actual bear involved in Randy's death,[3] "I was explained back then you know, the size and the weight of the bear." Thus, Dr. Mato did have information about the size and weight of the bear and apparently relied on that information to support her opinion about Randy's ability to move his head to avoid suffocation from the bear. Though trial counsel did not assert a specific foundation objection to Dr. Mato's testimony, trial counsel did inquire during cross-examination about the very matters Clay now claims as objectionable omissions. That cross-examination yielded testimony from Dr. Mato that is inapposite to Clay's assumption that a specific foundation objection would have been sustained. We do not believe, therefore, that trial counsel's failure to more specifically object to Dr. Mato's testimony constituted ineffective assistance. Dr. Mato's opinion with respect to Randy's development was based upon her personal observations as she had been Randy's treating pediatrician prior to his death. That fact, coupled with her testimony that she had been informed of the size and weight of the bear, suggest that even had an "appropriate" objection with respect to foundation been made, the testimony of Dr. Mato would not have been excluded.

■ In any event, Clay has not alleged how, even if trial counsel was ineffective in failing to more specifically object to Dr. Mato's testimony, there is a reasonable probability that the result would have been different. There was other overwhelming evidence of Clay's guilt which suggests otherwise. Less than three weeks after Audrey died, Clay went out with her sister and some friends. On the way home after a night of drinking, Clay, who was very drunk, started yelling and crying. She screamed, "I killed my babies." When one of the other passengers asked Clay how her babies had died, Clay replied that she killed her babies, "one with a pillow, one with a teddy bear." *Anderson v. State,* 66 S.W.3d 770, 778 (Mo.App. W.D.2002) (where there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the result would be different, the movant suffers no prejudice).

The trial court did not clearly err in denying Clay's post-conviction motion based upon Clay's claim of ineffective assistance of counsel due to counsel's failure to assert a specific foundational objection to Dr. Mato's testimony. Point one is denied.

### Point II

Clay next contends that trial counsel was ineffective for failing to file a motion requesting the trial court sever the two counts of murder in the first degree relating to Randy and Audrey. Clay fails to meet her burden on either prong of the *Strickland* test.

■■ "Whether to file a motion to sever is part of a counsel's trial strategy which we will not second guess on appeal." *State v. McNeal,* 880 S.W.2d 325, 331 (Mo. App. E.D.1994) (abrogated on other grounds as recognized in *State v. Dunn,* 889 S.W.2d 65 (Mo.App. E.D.1994); *State v. Little,* 861 S.W.2d 729, 731 (Mo.App. E.D.1993)). Trial strategy generally does not constitute ineffective assistance of counsel and " '[s]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.' " *Taylor v.*

---

**3.** The record reflects that the bear was destroyed shortly after the initial determination following Randy's death that his death was accidental.

*State,* 126 S.W.3d 755, 759 (Mo. banc 2004) (citations omitted); *State v. Tucker,* 866 S.W.2d 932, 934 (Mo.App. E.D.1993).

■ Clay's trial counsel testified at the post-conviction hearing that the decision not to file a motion to sever counts one and two was a strategic decision. Trial counsel testified the strategy was to use the accidental death determination initially reached by the CFRB with respect to Randy's death to attack the credibility of the investigation of Audrey's death. Counsel's theory was that the murder charge involving Randy's death was so weak that this would assist an argument challenging the murder charge involving Audrey. Trial counsel's decision not to sever counts one and two was made after all discovery had been complete and after consideration of the available means for attacking the credibility of the State's witnesses. The trial court's judgment on Clay's post-conviction motion reflects findings consistent with trial·counsel's testimony, indicating the trial court determined trial counsel's testimony to be credible. *Clay v. State,* 297 S.W.3d 122, 124 (Mo.App. S.D.2009) (appellate courts presume the findings of the motion court are correct and defer to the motion court's determinations of credibility). Clay has not established by a preponderance of the evidence that her trial counsel's strategic decision constitutes ineffective assistance of counsel.

In any event, Clay presented no evidence (and the trial court so found) that, even had a motion to sever been filed, the trial court would have favorably entertained the motion or would have been found to have abused its discretion had it denied the motion. *State v. Davis,* 825 S.W.2d 948, 953 (Mo.App. E.D.1992) (no prejudice unless appellant can show that it would have been an abuse of trial court's discretion to deny severance). Clay has thus failed to establish any prejudice.

The trial court did not clearly err in denying Clay's post-conviction motion based upon Clay's claim of ineffective assistance of counsel due to counsel's failure to file a motion to sever. Point two is denied.

### Point III

In Clay's third point on appeal, Clay contends trial counsel was ineffective for failing to depose Clay's father, who died prior to trial, to preserve his testimony for trial. We disagree.

To the extent trial counsel intended to call Clay's father as a witness at trial, that opportunity was lost due to Clay's father's death. The evidence suggests that Clay's father had been ill and bedridden for some time prior to his death. In fact, Clay's father was ill and bedridden at the time of Audrey's death. Clay contends that had her father's testimony been preserved, his testimony would have supported other evidence of the panic and commotion that ensued in the household immediately following the discovery that Audrey was not breathing. Clay's argument thus presumes that her father's testimony would have demonstrated a state of mind inconsistent with one who had just suffocated her child to death.

■ The trial court noted that the decision whether to depose a witness is generally a matter of trial strategy and not the basis for a claim of ineffective assistance of counsel. We agree. *See State v. Brittain,* 895 S.W.2d 295, 301 (Mo.App. E.D.1995) ("The decisions of trial counsel in terms of investigation are given great deference, and the decision whether to depose a witness is generally a matter of trial strategy."). Further, there is the practical difficulty that Clay failed to establish in the post-conviction hearing that trial counsel knew or should have known that Clay's

father would not survive to the time of trial. This is not a circumstance where trial counsel elected not to call a witness at trial. Rather, it is a circumstance where trial counsel is accused of not having the foresight to appreciate that a witness might die before trial. Under the circumstances, we do not believe trial counsel's failure to depose Clay's father to be ineffective assistance of counsel. In any event, Clay made no showing whatsoever during her post-conviction hearing that her father's testimony would have impacted a jury's determination of her guilt. Clay's father's testimony would have been merely cumulative to the testimony of other defense witnesses relating to Clay's emotional state at the time of Audrey's death. *Id.* at 301–02 (claim defective where fails to allege what statements would have come to light in a deposition and how those statements could have caused the result of the proceeding to be different).

The trial court did not clearly err in denying Clay's post-conviction motion on this basis. Point three is denied.

### Conclusion

After review of the entire record, we conclude that the trial court did not err in denying Clay's Rule 29.15 motion. The trial court's findings were not clearly erroneous. The judgment of the trial court denying Clay's Rule 29.15 post-conviction relief motion is affirmed.

All concur.