**Troy A. FORD, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 30585.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 25, 2011.

Ellen H. Flottman, Columbia, for Appellant.

Chris Koster, Atty. Gen., Shaun J, Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Troy Ford ("Movant") appeals the motion court's denial following an evidentiary hearing of his "Amended Motion to Vacate, Set Aside or Correct the Judgment or Sentence, and Request for an Evidentiary Hearing" filed pursuant to Rule 24.035.[1] Movant alleges two points of motion court error. We affirm the judgment of the motion court.

■ On November 15, 2006, Movant was charged by indictment with one count of the Class A felony of murder in the first degree, a violation of section 565.020, and one count of the unclassified felony of armed criminal action, a violation of section 571.015. On November 9, 2007, during Movant's jury trial, the State was granted leave to amend the charges against Movant and, pursuant to a plea agreement, Movant entered an *Alford*[2] plea to one count of murder in the second degree and one count of armed criminal

---

1. All rule references are to Missouri Court Rules (2010). Statutory references are to RSMo 2000, unless otherwise set out.

2. *Alford* plea allows a defendant to plead guilty to the charged crime and accept criminal penalty even if he is unwilling or unable to admit he committed the acts constituting the crime. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

action.[3] In entering his plea, Movant testified he understood the ramifications of his plea, he recognized the rights he was giving up, he related that he had spoken with his attorney about his rights, and he stated he was satisfied with his attorney's services. Movant admitted that he was pleading guilty to the lesser charge of second degree murder because "there will be enough evidence to find [him] guilty if [they] continue through the trial." The State then outlined the factual basis for both charges. The State related that Movant's grandmother was found murdered in her mobile home; that "[a]round her neck was a ligature that was used to strangle her" to death; and that next to the body was found a plate covered with "tea light candles." The State then set out that both the ligature and the plate contained Y chromosome DNA profiles that were consistent with Movant's own DNA profile. Additionally, there was various evidence suggesting that Movant had been in his grandmother's home during the weeks in between the date she was last seen by her neighbor and the date her body was found. After the State's recitation of the facts, Movant's counsel, Charles Ankrom ("Attorney Ankrom"), agreed that the State would be able to make a submissible case.

At the sentencing hearing on January 24, 2008, after arguments and evidence by both parties, the sentencing court sentenced Movant to life imprisonment for second degree murder and twenty years imprisonment for armed criminal action with the sentences to run concurrently. At the sentencing hearing Movant had no complaints about Attorney Ankrom's representation.

On July 25, 2008, Movant filed a *pro se* Rule 24.035 motion for postconviction re-

lief. Counsel was appointed to represent Movant, and an amended motion was filed on January 30, 2009. In the amended motion, Movant alleged that Attorney Ankrom was ineffective for failing to

> investigate, develop and present the copious evidence of extreme instability and dysfunction throughout [Movant's] childhood, as evidenced by [Movant's] drunk, abusive and absent father; his mentally, ill, drug addicted and absent mother; his own drug abuse beginning at age 7 as a means of coping; and his being moved almost constantly.

In particular, the motion argued that Movant's plea was involuntary in that "[h]ad [Movant] known that this evidence could have been presented to [a] jury to mitigate his sentence, he would not have pleaded guilty." Alternatively, the motion asserted that "had [Attorney Ankrom] presented this evidence, the [sentencing] court would have imposed a more lenient sentence."

An evidentiary hearing in this matter was held on February 5, 2010. On March 30, 2010, the motion court entered its "Order Pursuant to Rule 24.035" in which it denied the relief requested by Movant. With regard to Movant's first claim, the motion court found "Movant's suggestion that his plea was rendered involuntary by his alleged lack of understanding that he could present evidence at a sentencing phase is not credible, is refuted by the record, and he was not prejudiced." In denying Movant's second claim concerning the possibility of a more lenient sentence, the motion court stated that

> [a]t Movant's sentencing hearing, the [sentencing court] had a variety of information to consider in its sentencing determination. The record reflects that at

---

**3.** Under the plea agreement, Movant agreed to enter his *Alford* plea in exchange for a reduction in the murder charge with the sen-

tencing determination to be made by the court.

Movant's sentencing, Attorney Ankrom presented information on Movant's behalf supporting Movant's lack of criminal history, Movant's age, that Movant's father passed away when Movant was 17, that Movant raised his younger brother, Movant's job history, a written statement from Movant's mother, and testimony from Movant's [two] sisters.... In addition, Attorney Ankrom presented his research as to comparative sentences for what were described as similar crimes in Greene County.

This appeal timely followed.

■ "Appellate review of the denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Stuart v. State*, 263 S.W.3d 755, 757 (Mo.App.2008); *see also Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). The motion court's findings are presumed correct. *Boyd v. State*, 205 S.W.3d 334, 338 (Mo.App.2006). A judgment is clearly erroneous only if, after reviewing the entire record, "we are left with the definite and firm impression that a mistake has been made." *Stuart*, 263 S.W.3d at 757. In reviewing a motion for postconviction relief pursuant to Rule 24.035, an *Alford* plea is treated no differently than a guilty plea. *Nguyen v. State*, 184 S.W.3d 149, 152 (Mo.App.2006).

■ To be entitled to postconviction relief for ineffective assistance of counsel, the movant must show by a preponderance of the evidence that: "1) counsel failed to exercise the customary skill and diligence of a reasonable competent attorney under similar circumstances, and 2) counsel's deficient performance prejudiced him." *Worthington*, 166 S.W.3d at 572–73; *see Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the first prong of the

*Strickland* test, the movant must overcome the strong presumption that counsel's performance was objectively reasonable and effective. *Worthington*, 166 S.W.3d at 573. To defeat this presumption, the movant must point to " 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.' " *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). "[R]easonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Cole v. State*, 152 S.W.3d 267, 270 (Mo. banc 2004).

■ In cases involving a negotiated guilty plea, the movant can only meet the prejudice prong by showing that "but for the conduct of his trial attorney about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Stuart*, 263 S.W.3d at 757; *see Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). After a negotiated guilty plea, an ineffective assistance of counsel claim is "immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Boyd*, 205 S.W.3d at 338. In order to be valid, "[a] guilty plea must be a voluntary expression of a defendant's choice that is knowingly and intelligently made with sufficient awareness of the relevant circumstances and likely consequences." *State v. Lawrence*, 250 S.W.3d 763, 766 (Mo.App.2008).

■ Similar to the second claim raised in his amended motion for postconviction relief, Movant's first point relied on asserts the motion court clearly erred in denying his request for relief because Attorney Ankrom was ineffective in that he "did not investigate and call witnesses at sentenc-

ing, such as [Movant's] sisters, who could have supported [Movant's] defense by testifying to the dysfunctional and abusive environment in which [Movant] was raised." Movant believes Attorney Ankrom's performance at sentencing was prejudicial because it led to a "greater sentence than [Movant] would have otherwise been given."

Movant's first point fails because he cannot prove that Attorney Ankrom's performance at the sentencing hearing fell below an objective standard of reasonableness. *Worthington*, 166 S.W.3d at 573. As the State correctly points out, at the sentencing hearing Attorney Ankrom offered argument and evidence in support of his sentencing recommendation. Attorney Ankrom pointed out to the sentencing court that Movant was only twenty-four years old at the time of the offense; that he had no prior felony convictions and only two misdemeanor convictions; that his father passed away when Movant was just seventeen years old and he "took it upon himself" to raise his younger brother; and that Movant had been a "productive member of society," holding jobs at various business establishments. Attorney Ankrom also related to the sentencing court that, among various second-degree murder cases reported in the local newspaper, the punishments imposed included a twelve-year sentence, a fourteen-year sentence, three fifteen-year sentences, and an eighteen-year sentence. Accordingly, he requested the sentencing court impose a sentence of twelve years imprisonment, but not longer than fifteen years imprisonment. Attorney Ankrom also presented the testimony of Movant's two sisters, who testified that Movant was a reliable, caring brother as well as a quality individual.

Despite the above arguments Attorney Ankrom put forth at sentencing, Movant is dissatisfied with Attorney Ankrom's performance because Movant wanted him to call as witnesses not only his two sisters, but also his brothers, his aunt and uncle, a couple of friends, and an ex-girlfriend. Further, Movant believes Attorney Ankrom did not put forth sufficient evidence of Movant's childhood "by calling witnesses who could explain the abusive and dysfunctional nature of it." At the evidentiary hearing, Attorney Ankrom testified that, while he spoke with Movant's sisters "extensively" during the course of the trial about "how [Movant] was raised," his professional opinion was that such background information was not "necessarily a mitigating thing for a [j]udge or jury" and "that type of evidence can cut against you just as easily as for you in a sentencing hearing." Attorney Ankrom also pointed out that his trial strategy was to emphasize Movant's youth and lack of prior convictions, and to highlight the sentences imposed in similar second-degree murder convictions in Greene County. Attorney Ankrom made the tactical decision based on his experience as a criminal law attorney not to have much witness testimony about Movant's past because of the risk that the sentencing court would look at Movant's personal background and believe he could not be rehabilitated back into society.

Based on this record, we do not believe the motion court erred in determining Attorney Ankrom's trial strategy was reasonable. Attorney Ankrom clearly chose to focus on the positive aspects of Movant's character and emphasized his youth and lack of prior felony convictions as opposed to drawing attention to Movant's tumultuous background as a means of procuring a more lenient sentence. It is our view that Attorney Ankrom made this decision based on his reasonable and professional judgment. " '[R]easonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis

for a claim of ineffective assistance.'" *Christeson v. State*, 131 S.W.3d 796, 799 (Mo. banc 2004) (quoting *Skillicorn v. State*, 22 S.W.3d 678, 683 (Mo. banc 2000)). In that we agree with the motion court that Attorney Ankrom's performance during the sentencing phase was competent and reasonable, we need not review whether Movant was prejudiced by his trial counsel's alleged ineffectiveness. *See Williams v. State*, 205 S.W.3d 300, 305 (Mo.App.2006). Point denied.

■ In Movant's second point relied on he asserts Attorney Ankrom provided ineffective assistance of counsel to Movant because he did not inform Movant that "had he proceeded with trial, he could present evidence to the jury regarding his dysfunctional and abusive childhood." Movant claims this alleged ineffectiveness rendered his plea involuntary, because "had he known this evidence could be presented, he would not have entered an *Alford* plea and would have continued with the jury trial."

We agree with the motion court's assessment that Movant's claim in his second point relied on lacks credibility and is refuted by the record. First, the record indicates that Movant waived his right to jury sentencing before he pled guilty. A docket entry reveals that on November 5, 2007, Movant appeared with counsel and waived jury sentencing. According to that same docket entry, it was not until November 9, 2007, that Movant pled guilty in the middle of his jury trial. As the State's brief points out, even if Movant had not pled guilty and decided to continue with the trial, he would not have had the chance to present mitigating evidence of his past to the jury during the sentencing phase. This fact negates Movant's argument that, if he had continued with the

trial, he could have been found guilty of a lesser-included offense,[4] and the jury would have had discretion to sentence Movant to a punishment other than life imprisonment. However, this hypothetical situation is unrealistic because Movant waived his right to be sentenced by a jury at the outset of trial.

Even if Movant had not waived jury sentencing prior to entering his guilty plea, it does not appear probable that additional advice from his trial counsel about the possibility of presenting mitigating evidence to a jury at sentencing would have changed his decision to plead guilty. This is because at his plea hearing Movant plainly testified that he was entering his *Alford* plea to second-degree murder because he believed there was enough evidence for the jury to find him guilty of first-degree murder. Both Movant and Attorney Ankrom testified at the evidentiary hearing that they had discussed Movant's legal rights and the consequences of pleading guilty. Movant stated at the plea hearing that he was satisfied with Attorney Ankrom's services, and at no point did Movant ever state that Attorney Ankrom's advice to plead guilty was unreasonable or incorrect. The motion court did not clearly err in concluding that this claim was not credible and lacked support from the record. Movant's second point is denied.

The judgment of the motion court is affirmed.

LYNCH and BURRELL, JJ., concur.

---

4. *See* section 565.025.