Vermonn T. ROBERTS, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 72575.

Missouri Court of Appeals,
Western District.

Oct. 11, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 22, 2011.

Application for Transfer
Denied Jan. 31, 2012.

Susan E. Summers, Kansas City, MO, for appellant.

Shaun J. Mackelprang and Daniel N. McPherson, Jefferson City, MO, for respondent.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Vermonn Roberts ("Roberts") appeals from the motion court's judgment denying her Rule 29.15 motion for post-conviction relief after an evidentiary hearing. Roberts contends that the motion court clearly erred in denying her motion because: (1) trial counsel failed to adequately prepare for, and put on mitigation evidence at, Roberts's sentencing hearing; (2) Roberts was denied her constitutional right to counsel because her trial counsel was not a duly licensed attorney; (3) trial counsel was ineffective because he failed to comply with Supreme Court Rule 9.03 pertaining to visiting attorneys and was so deficient in his overall performance as to deny Roberts her constitutional right to counsel; and (4) trial counsel persuaded Roberts to waive jury sentencing. We affirm.

## Factual and Procedural History[1]

In 2003, Roberts, a high school student, resided near Dustin Thomas ("Thomas"), a classmate. Roberts and Thomas had separate groups of friends who had a history of fighting with one another. In May 2003, the two groups fought over a basketball game that involved some of Roberts's relatives on one side, and some of Thomas's friends on the other. The feud over this game continued, leading to a physical altercation on June 12, 2003. Roberts pushed Thomas during this fight, and words were exchanged.

On June 16, 2003, the two groups got into a verbal altercation but dispersed without violence. Later that evening, Roberts repeatedly drove by Thomas's house yelling out of her car window. The third time that Roberts drove by, Robert Stinvil ("Stinvil"), a friend of Thomas's, went outside and hit Roberts's car with a tire iron, shattering the back window. Roberts drove off.

Later that evening, Thomas and Stinvil were standing in Thomas's driveway with other friends. Six cars pulled into a near-

---

1. We view the facts in the light most favorable to the jury's verdict. *Clay v. State*, 310 S.W.3d 733, 734 n. 1 (Mo.App. W.D.2010).

by parking lot. A dozen or more people got out of the cars and headed towards Thomas's house armed with weapons such as knives, metal poles, and crowbars. Stinvil still had the tire iron in his hands, and one other person in Thomas's group of friends was armed with a crowbar. Words were exchanged. An unknown assailant hit Thomas in the head with a pair of garden shears. Thomas grabbed his head and walked off. As Thomas stood away from the group with his hands on his knees, Roberts walked up to him and stabbed him in the neck. Stinvil swung at Roberts, and she ran off. Thomas collapsed. Thomas died shortly thereafter. An autopsy determined the cause of death was a stab wound to the neck.

Roberts was taken into custody. When Roberts was interrogated, Roberts admitted that she cut Thomas with a kitchen knife. Roberts claimed that she was not aware of how badly Thomas was hurt and that she did not mean to kill him. Roberts testified that after stabbing Thomas, she took the knife home, washed it, and put it back in the drawer. DNA tests revealed Thomas's blood on Roberts's pants.

Roberts was charged with murder in the first degree and armed criminal action. Roberts waived jury sentencing prior to the commencement of her trial. Following a jury trial, Roberts was convicted of the lesser included offense of murder in the second degree and armed criminal action. The trial court sentenced Roberts to consecutive sentences of life imprisonment for murder in the second degree and thirty years imprisonment for armed criminal action. Roberts's convictions and sentences were affirmed on direct appeal in *State v. Roberts*, 242 S.W.3d 479 (Mo.App. W.D. 2008).

Roberts timely filed her pro se Rule 29.15 motion. Appointed counsel timely filed an amended motion. The motion court denied the amended Rule 29.15 motion after an evidentiary hearing. Roberts appeals.

## Standard of Review

"Our review of the denial of [Roberts's] Rule 29.15 motion is 'limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous.'" Rule 29.15(k); *Clay v. State*, 310 S.W.3d 733, 735 (Mo.App. W.D.2010). "'The motion court's findings and conclusions are clearly erroneous if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made.'" *Id.* (quoting *Peterson v. State*, 149 S.W.3d 583, 585 (Mo.App. W.D.2004)).

## Analysis

Roberts raises four points on appeal. Her first, third, and fourth points allege that Appellant received ineffective assistance of trial counsel. Roberts's second point alleges that her constitutional right to be represented by counsel was violated.

To establish ineffective assistance of counsel as asserted in points one, three and four, Roberts must prove by a preponderance of the evidence: "(1) that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) that [Roberts] was thereby prejudiced." *Haskett v. State*, 152 S.W.3d 906, 909 (Mo. App. W.D.2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If Roberts fails to demonstrate either prong of the *Strickland* test, her post-conviction motion will be denied. *Id.*

To establish the performance prong, Roberts bears a heavy burden "and must overcome a strong presumption that [her] counsel provided competent assistance."

*Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). Roberts must demonstrate " 'that counsel's representation fell below an objective standard of reasonableness.' " *Id.* at 426 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). To demonstrate this, Roberts "must identify specific acts or omissions of counsel that resulted from unreasonable professional judgment, and the 'court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.' " *Id.* (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). We judge the reasonableness of counsel's conduct based on the facts of each case. *Williams v. State,* 205 S.W.3d 300, 305 (Mo.App. W.D.2006).

To establish prejudice, Roberts must show that there is a reasonable probability that but for her counsel's ineffectiveness, the result would have been different. *Patterson v. State,* 110 S.W.3d 896, 900 (Mo. App. W.D.2003). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (citations omitted). A showing of error that could have a conceivable effect on the outcome is insufficient. *Williams,* 205 S.W.3d at 305.

■ To establish that Roberts's constitutional right to the assistance of counsel as guaranteed by the United States and Missouri Constitutions was violated as alleged in point two, Roberts must demonstrate that her trial counsel was not a duly licensed attorney.

> Both the United States and Missouri constitutions guarantee a criminal defendant the right to assistance of counsel during all critical stages of his or her proceedings. In accordance with this guarantee, Missouri courts have interpreted "counsel" to mean "a duly licensed lawyer, and not a mere attorney in fact or layman." As a result, when a criminal defendant is represented by a lawyer who is not duly licensed, such representation constitutes the unauthorized practice of law and thus deprives the defendant of his or her Sixth Amendment rights.

*State v. Murillo,* 149 S.W.3d 930, 931 (Mo. App. W.D.2004) (internal citations omitted).

### Point I

In her first point on appeal, Roberts argues that the trial court erred in denying her post-conviction motion because Roberts established that her attorney was ineffective in failing to adequately prepare for, and put on mitigation evidence at, Roberts's sentencing hearing. Specifically, Roberts claims that her trial counsel failed to put on evidence concerning Roberts's "background, childhood abuse, character, lack of propensity to cause physical harm to others, lack of criminal history, work habits, plans for college, and family and church support." Roberts contends that but for counsel's failure to put on this mitigation evidence there is a reasonable probability that she would have received a lesser sentence. We disagree.

At the sentencing hearing, the trial court opened the proceedings by noting that it had been provided with a Pre-Sentence Investigation Report ("PSI"), and that it had received several letters supporting Roberts and asking for leniency in sentencing. During the hearing, the State emphasized a twelve page letter written by Roberts and attached to the PSI which the State claimed demonstrated Roberts's lack of remorse for the murder of Thomas. In the letter, Roberts wrote "any sane person placed in such situation as I would've acted as I did." The State noted that while in custody, Roberts had been the subject of twenty-five disciplinary actions, five of which resulted in Roberts being placed on lockdown, and two of

which occurred while Roberts was in lockdown. The State also presented victim impact testimony from Thomas's father, brother, and sister-in-law, and a victim impact letter from Thomas's mother. The State asked for consecutive maximum sentences on each count.

Roberts's counsel argued that the letter Roberts had written demonstrated her inability to make sense of what had happened. He noted that Roberts was a citizen of Liberia, and not of the United States. Trial counsel told the court that Roberts's mother was not fluent in English, and that he was instead calling a family friend, Victor Gay ("Gay"), to testify as a spokesman for Roberts's mother. Gay stated that Roberts did not have a criminal history. Gay testified that Roberts had been working hard and focusing on trying to go to college "when she was caught in an unexpected web of violence." Gay testified that Roberts was "a true believer of Christ who used to attend life services every morning." Gay described Roberts as "a sweet, quiet, obedient young lady who always does the right thing, until the awful date of June 16, 2003." Gay assured the court that Roberts would grow up to become a productive member of society if given the chance. Roberts's trial counsel informed the court that other family members and friends were present, and would echo Gay's testimony if called to testify. Trial counsel advised that he did not think it necessary to call all of the family members and friends as witnesses, and reminded the court that he had provided written statements from some of the family members.

In her amended Rule 29.15 motion, Roberts claimed that trial counsel failed to discuss the sentencing hearing with her, and that had she known she could have presented witnesses and other evidence, she would have given trial counsel information to do so. Specifically, Roberts

claims she would have wanted trial counsel to present testimony from her sister, Corrina Roberts Gee ("Gee"), from her former high school guidance counselor, Kathy Mahan ("Mahan"), from Pastor Price Ellis ("Ellis"), and from "churchmother" Joyce Lewis ("Lewis"). In the amended motion, Roberts also claimed she would have wanted trial counsel to present evidence of her flight from Liberia at age eight, that English was not her first language, and of abuse at the hand of her older brother's wife.

During the evidentiary hearing conducted on Roberts's amended Rule 29.15 motion, Gee, Mahan, Ellis, and Lewis testified. Gee testified that she and Roberts moved to the United States from Liberia in 1993 due to the Civil War there; that they moved in with her brother and sister-in-law where they were verbally and physically abused by their sister-in-law; that Gee asked Roberts's counsel if she could testify at Roberts's sentencing hearing but was not called to do so; and that Gee was present in the courtroom at the sentencing hearing but did not know that she could write a letter to the court.

Mahan testified that she saw Roberts approximately every other week by her senior year, but did not engage in in-depth counseling with Roberts because Roberts was one of 400 students over whom Mahan had responsibility. Mahan testified that in her experience, Roberts was a good person who wished to go to college. Mahan did acknowledge that Roberts had been suspended from school several times. Mahan testified that she called Roberts's counsel but never received a return call.

Ellis testified that Roberts had attended his church. Although he knew Roberts to be a good person, he did not have any "heavy kinds of opinions" about Roberts.

Lewis testified that as the new member's coordinator at the church, she had

driven Roberts to church. Lewis testified that she knew Roberts to be a good person and that she had never seen any violent behavior from her.

Roberts testified at her Rule 29.15 hearing that Gee's testimony about her abuse was accurate even though Roberts had denied that she had ever been abused in connection with preparation of the PSI. Roberts testified that she did not give her trial counsel the names of any potential mitigation witnesses to call at the sentencing hearing because her trial counsel never asked her whether there were witnesses she wanted to have present. Roberts testified that her trial counsel should have presented evidence that she was a certified nursing assistant, that she volunteered at North Kansas City Hospital, and that she was working at a nursing home.

Roberts's trial counsel, Mark Sachse ("Sachse"), testified that he discussed mitigation evidence with Roberts's family and minister. Sachse stated that he was unaware of the claim that Roberts had been abused and had no recollection that Roberts had done any volunteer work. Sachse testified that because of the language barrier, he believed Gay was in a better position to summarize the family's perspective and desire for sentencing leniency in a way that would be understandable to the trial court. Roberts's counsel stated that he assumed he was the one who submitted a letter to the trial court prior to sentencing regarding Roberts's employment.

▇ In denying Roberts's Rule 29.15 motion, the motion court noted that Roberts's trial counsel had, in fact, presented mitigation evidence at the sentencing hearing. In addition to the testimony of Gay, trial counsel presented several letters to the trial court including a letter from her place of employment prior to incarceration; a letter signed by Roberts's family offering sympathy for Thomas's family and describ-ing Roberts as a "sweet, quiet, and obedient young lady;" a letter from a member at Roberts's church offering a similar description of Roberts and adding that Roberts had been involved in Black History Month at the church where she taught Girl Scout Troops a Liberian dance; and a letter from Donna James expressing how Roberts had helped her daughter through troubling times.

The motion court, citing *Strong v. State*, 263 S.W.3d 636, 652 (Mo. banc 2008), held that the choice of witnesses is a matter of trial strategy. The motion court found:

> Movant was one of roughly 400 students of Kathy Mahan's and Mahan admitted that she would check on Movant infrequently. Price Ellis stated he never formed any "heavy kinds of opinions" about Movant. Joyce Lewis simply drove Movant to church. Corrina Ray Gee testified that she would have been surprised to find out her sister had denied any abuse to a probation officer. When presented with an opportunity to present evidence of that [sic] Movant had been abused physically, psychologically, or sexually, Movant paused but denied abuse. Given these facts, it was reasonable trial strategy for trial counsel to call a family spokesman and present statements from the family rather than put witnesses [sic] who may not have known Movant as well as her family.

▇ Roberts has failed to overcome the presumption of reasonable trial strategy. The motion court's finding that Roberts failed to prove trial counsel rendered ineffective assistance was not clearly erroneous in light of the fact that all but one of the witnesses Roberts claims should have been called to testify would have offered nothing more with their testimony than what was testified to by Gay and covered in the letters that were submitted. " 'Gen-

erally, the selection of witnesses and the introduction of evidence are questions of trial strategy and virtually unchallengeable.'" *Johnson v. State,* 333 S.W.3d 459, 463–64 (Mo. banc 2011) (citation omitted). Trial counsel will not be found ineffective for failing to present cumulative evidence. *Id.* at 468.

 Gee would have testified about Roberts's purported childhood abuse. However, there was no evidence that Sachse had been made aware of this fact before Roberts's sentencing. Trial counsel will not be found ineffective for failing to call witnesses whose names were not provided to him. *Zeitvogel v. State,* 760 S.W.2d 466, 471 (Mo.App. W.D.1988). Even more problematic, Roberts denied having been the victim of abuse when interviewed in connection with preparation of the PSI. Thus, even had Sachse known of Gee's possible testimony, any decision he might have made not to call Gee at the sentencing hearing would have represented an acceptable trial strategy as Gee's testimony would have impeached Roberts. Sachse cannot be indicted as ineffective for failing to call a witness whose testimony could open up an unfavorable avenue of cross examination. *State v. Ramsey,* 864 S.W.2d 320, 340 (Mo. banc 1993).

 Roberts did not meet her burden to establish that her trial counsel was ineffective. Even had she met this burden, she would be unable to prevail, as Roberts has not demonstrated the prejudice she claims—that but for her trial counsel's ineffectiveness, she would have received a lesser sentence. At sentencing, the trial court noted the senseless nature of Thomas's murder as it had arisen over hard feelings following a basketball game. The trial court specifically noted that "[w]hen people get ready to do battle, arm themselves with weapon [sic], meet and do battle and lives are taken, that simply can't be tolerated. It can't be excused." In light of this expression, the motion court found that "[t]he evidence presented at the [Rule 29.15] evidentiary hearing would not have influenced the Trial Court to have made a different decision." Specifically, the motion court found:

> Ultimately, upon hearing the mitigating evidence from the evidentiary hearing, the resulting sentence would have been the same. The facts of the murder are quite disturbing. Ultimately, the jury found that Movant acted without premeditation, but the facts include Movant, armed with a knife, traveled to the scene with friends. Movant stabbed the [sic] Dustin Thomas in the neck after he had been hit in the head and had moved away from the fight. Additionally, Movant had an extensive disciplinary record while in custody awaiting trial. Movant received twenty-five (25) disciplinary action reports while in jail, including five (5) resulting in lockdown status and two (2) occurring while in lockdown status. Finally, Movant's letter to the Court revealed a lack of remorse for the taking of human life. . . . Movant has failed to establish any prejudice resulting from trial counsel's actions or failure to act.

We conclude that the motion court's findings are not clearly erroneous.

Point one is denied.

### Point II

 In her second point on appeal, Roberts contends that the trial court erred in denying her Rule 29.15 motion because she was denied her constitutional right to counsel since her lead trial counsel, Sachse, was not a duly licensed attorney. In so arguing, Roberts correctly posits that both the United States and Missouri constitutions guarantee a criminal defendant the right to assistance of counsel during all critical stages of his or her

proceedings. U.S. CONST. amend. VI; MO. CONST. art. I, section 18(a). Roberts also correctly notes that Missouri courts have construed this constitutional protection to be violated when a criminal defendant is not represented by a "duly licensed lawyer." *Murillo,* 149 S.W.3d at 931.

Notwithstanding her point relied on, Roberts proceeds in the argument portion of her brief to complain about Sachse's malfeasances in other cases as indicative of someone who is not a "duly licensed lawyer," while acknowledging that Sachse was, at all times pertinent to her case, a "duly licensed lawyer," albeit in Kansas and not in Missouri. Although malfeasances in other cases did eventually lead to discipline on Sachse's Kansas law license in the form of suspension in June 2006 and disbarment in September 2007, there is no dispute that Sachse was a duly licensed lawyer when he represented Roberts.

Concededly, Sachse did not comply with Rule 9.03 to secure *pro hac vice* admission in Missouri in connection with his representation of Roberts. However, Roberts has offered no authority for the proposition that a violation of Rule 9.03 is tantamount to deprivation of the constitutional right to counsel. In fact, Roberts concedes the reverse in her Brief, observing that:

2. In *Neely,* the Southern District held that a defendant was not prejudiced by the fact counsel was not licensed to practice law in Missouri, where counsel was licensed and practiced criminal law in another state and was familiar with the defendant and the circumstances surrounding the murder and where counsel substantially complied with Rule 9.03 by contacting local counsel who filed an appearance in the case and served as co-counsel. 979 S.W.2d at 558.

3. In *Stott,* the Eastern District expressly held that "mere noncompliance with the filing and formal entry of appearance of local counsel

Missouri courts have held that mere noncompliance with the requirements of Rule 9.03 does not by itself constitute constitutional error. *State v. Neely,* 979 S.W.2d 552, 558 (Mo.App. S.D.1998).[2] As the court observed in *Stott v. State,* such a per se rule would be inappropriate, since attorneys licensed in other States are presumably qualified to practice law. 771 S.W.2d 841, 843 (Mo.App. E.D.1989).[3]

Though Roberts then attempts to distinguish these cases by asserting that Sachse was clearly not qualified because he was subsequently disbarred in Kansas, she misses the point in the process. So long as Roberts was represented by a duly licensed attorney at trial, even one who had failed to address technical requirements associated with the authorized practice as a visiting attorney in a state other than the state of licensure, Roberts's constitutional right to counsel was not violated.[4]

Point Two is denied.

### Point III

In point three, Roberts contends that the trial court erred because Sachse was ineffective due to his failure to comply with Rule 9.03, and due to his deficient overall performance which denied Roberts her

requirements of Rule 9.03 does not constitute constitutional error." 771 S.W.2d at 843.

4. It is uncontested that Roberts was also represented at trial by Paul Serrano ("Serrano"), a duly licensed attorney in the State of Missouri. The record suggests Roberts initially hired Serrano, who joined Sachse as co-counsel given Sachse's greater experience in trying first degree murder cases. Serrano's involvement as co-counsel (or even as mere local counsel, as suggested by Roberts) affords a second basis for rejecting Roberts's claim that she was denied her constitutional right to the assistance of duly licensed counsel.

constitutional right to counsel. We disagree.

■ We have already determined that Sachse's conceded failure to comply with Rule 9.03 requiring *pro hac vice* admission for visiting attorneys licensed in another state did not constitute constitutional error. Roberts offers no connection between Sachse's failure to comply with Rule 9.03 and her contention that Sachse was ineffective as counsel as a result. Roberts's bare assertion, unsupported by any authority, that an attorney's failure to comply with a *pro hac vice* rule constitutes ineffective assistance of counsel is rejected. " 'Rule 84.04(d) requires that an Appellant provide appropriate citation to authority in support of his contentions.' " *Smith v. Smith,* 985 S.W.2d 829, 834 (Mo.App. W.D. 1998) (citations omitted). "If no authority exists on the issue, an explanation for the absence of authority is required. If no explanation is given, we may consider the point to be abandoned." *Id.*

Roberts further claims that Sachse was "so deficient in his overall performance" as to deny Roberts her constitutional right to representation, and that but for Sachse's overall deficient performance, "there is a reasonable probability the jury would have acquitted Roberts or convicted her of a lesser included offense."

■ Roberts's point relied on does not identify any particular performance deficiency (other than the failure to comply with Rule 9.03). In the argument portion of her brief, Roberts points to numerous claimed deficiencies. She claims Sachse had been the subject of "numerous complaints" to the Kansas Bar. Even if true, Roberts offers no authority for the proposition that complaints against counsel filed by clients in other cases bears any relationship to whether a defendant has met her burden to establish that trial counsel was ineffective in her case. Given the absence of any authority on this point, we consider the argument abandoned. *Id.*

■ Roberts also claims that Sachse never deposed or interviewed three eyewitnesses the prosecution called in their case in chief; never deposed or interviewed any of the thirteen witnesses listed in the Indictment or called at trial; filed no pre-trial motions; called no defense witnesses at trial; had no experience in front of the trial judge; and did not meet with Roberts between her trial and sentencing. We need not detain ourselves with a belabored discussion of the "merit" of these claims of ineffective assistance, however, as even if they could be established, Roberts cannot demonstrate the "prejudice" she claims—that but for the ineffective assistance, she would either have been acquitted or convicted of a lesser included offense.

Roberts was originally charged with first degree murder. She was not convicted of first degree murder. She was convicted of the lesser included offense of second degree murder. As the motion court found:

Movant proves no prejudice.... Mr. Sachse obtained an acquittal on the Murder in the First Degree charge. Additionally, Mr. Sachse performed effective cross-examinations of the State's witnesses. He exposed inconsistencies and potential embellishments in witness' testimony and their police statements. Mr. Sachse also brought forth testimony that the victim had been armed just prior to the murder while cross-examining Jamal Frye. A careful and thorough reading of the trial transcript shows that Mr. Sachse was a competent and effective attorney.

Roberts ignores these findings. She makes the bare assertion that Sachse's incompetence prevented her from being

convicted of voluntary or involuntary manslaughter instead of second degree murder, affording Sachse no credit for securing the lesser included conviction for second degree murder. Roberts ignores that Sachse tendered jury instructions for the lesser included offenses of voluntary and involuntary manslaughter, and that those instructions were submitted to the jury. Roberts offers no specifics with respect to how additional depositions, witness interviews, motions or other actions by Sachse would or could have permitted a jury to convict her of voluntary or involuntary manslaughter in lieu of second degree murder. The motion court's finding that Roberts was not prejudiced is not clearly erroneous.

Point three is denied.

## Point IV

In her fourth and final point, Roberts argues that the trial court erred in denying her Rule 29.15 motion because trial counsel was ineffective when he advised and persuaded Roberts to waive jury sentencing. Roberts claims that trial counsel told her that if she was found guilty, a jury would want to give her the maximum sentence and that but for her counsel's error, there is a reasonable probability that Roberts would have received a lesser sentence. We disagree.

Sachse testified at the Rule 29.15 hearing that he recommended that Roberts waive jury sentencing because based on his experience trying capital cases in Kansas, he had formed the belief that "after a jury ha[s] convicted your client of murder, it [is] a very difficult thing to then ask them for jury leniency." Sachse testified that he had talked with Missouri attorneys about jury versus court sentencing in general, and that he had noticed in his own practice that judges would sometimes give a lighter sentence to a defendant who had

waived a right. Roberts testified that Sachse advised her to waive jury sentencing because he felt the jury would sentence her more harshly than the Judge and that Roberts relied on that advice.

The motion court found that Sachse's decision to recommend that Roberts waive jury sentencing fell "within the range of what is considered sound trial strategy." The motion court noted:

This Court will refrain from using the benefit of hindsight to determine the effectiveness of trial counsel. Additionally, Movant wrote a letter to the Court in which little remorse was shown for the killing of the [sic] Dustin Thomas. Movant stated that "any sane person placed in such situation as I would've acted as I did." It was reasonable for Trial Counsel to believe that it would be more effective to seek leniency from the Court rather than from a jury that had just convinced Movant of Murder in the Second Degree.

We agree.

"The decision to waive a jury trial [is] a matter of trial strategy and consequently does not provide a basis for post-conviction relief." *Smith v. State*, 837 S.W.2d 25, 28 (Mo.App. W.D.1992). "While there is no constitutional right to jury sentencing, Missouri provides a statutory right to jury sentencing unless ... the defendant requests in writing, prior to voir dire, that the trial court assess punishment." *State v. Collins*, 290 S.W.3d 736, 744 (Mo.App. E.D.2009). This is a matter of sound trial strategy. *Woodworth v. State*, No. WD70685, slip op. at *5, 2010 WL 3118435 (Mo.App. W.D. August 10, 2010) (where counsel was not ineffective in failing to instruct Movant to waive his right to jury sentencing as it was a matter of trial strategy). "The legislature, lawyers, and judges understand the potentially significant trial strategy deci-

sions that would differ between jury and judge sentencing. Consistent with that reasoning, section 557.036 provides that if the criminal defendant desires to waive his right to jury sentencing, he must do so before trial begins." *State v. Teer*, 275 S.W.3d 258, 263 (Mo. banc 2009) (Fischer, Z., concurring). " '[R]easonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance.' " *Ford v. State*, 334 S.W.3d 679, 682 (Mo. App. S.D.2011) (citation omitted). *See also, State v. Nunley*, 923 S.W.2d 911, 923 (Mo. banc 1996) (holding it was reasonable trial strategy for counsel to have determined that sentencing by the court was preferred to sentencing by a jury).

 Trial counsel's testimony at the evidentiary hearing supports the motion court's finding that the recommendation to waive jury sentencing was a matter of trial strategy. Roberts has not met her burden to establish the first prong of the *Strickland* test.

 Roberts has also failed to establish prejudice, the second prong of the *Strickland* test. Roberts claims that she was prejudiced by Sachse's advice that she waive jury sentencing, and characterizes the advice as a misrepresentation. However, in the very next sentence of her Brief, Roberts concedes: "It is impossible to know for certain whether the jury would have given her a more lenient sentence, but certainty is not the prejudice standard." That may be true. However, Roberts was at least obliged to demonstrate a reasonable probability that but for Sachse's advice, the jury would have imposed a lesser sentence. *See Eichelberger v. State*, 134 S.W.3d 790, 792 (Mo.App. W.D.2004). Beyond merely observing the obvious—that a jury "might" have afforded her a lesser sentence—Roberts offers no concrete basis for us to conclude that there is a reasonable probability that but for Sachse's advice (assuming, *arguendo*, that the advice was indicative of ineffective assistance), she would have received a lesser sentence from the jury. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Patterson*, 110 S.W.3d at 900 (citations omitted). A showing of error that could have a conceivable effect on the outcome is insufficient. *Williams*, 205 S.W.3d at 305. In short, claiming that Sachse's advice "might" have resulted in a different outcome does not satisfy Roberts's burden to establish that a reasonable probability existed that a jury would have sentenced her more leniently than the court.

The motion court found that Roberts "failed to establish any prejudice resulting from trial counsel's actions." The motions court's finding is not clearly erroneous.

Point four is denied.

## Conclusion

After review of the entire record, we conclude that the motion court did not err in denying Roberts's amended Rule 29.15 motion. The motion court's findings were not clearly erroneous. The judgment of the motion court denying Roberts's amended Rule 29.15 motion is affirmed.

All concur.