

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| ANTHONY L. SINKS, | ) | No. ED112027 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | 23CG-CC00006 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Benjamin F. Lewis |
| | ) | |
| Respondent. | ) | Filed: September 3, 2024 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Cristian M. Stevens, J.

**Introduction**

The underlying events giving rise to this Rule 29.15 post-conviction relief case occurred the morning of August 1, 2018 in Cape Girardeau County when Anthony Sinks shot and killed Victim, his ex-wife's fiancé, in a Hardee's restaurant. Victim had arrived in Cape Girardeau the night before from Ohio where he lived and parked his vehicle outside Ex-wife's apartment. Around 10:00 p.m., Sinks posted a link on social media to a song about shooting and killing a rival. The next morning, around 9:30 a.m., Victim and Victim's son went to Hardee's for breakfast. Sinks was also there. As Victim and his son were getting ready to leave, Victim and Sinks began arguing and Sinks told Victim that while he would not fight him, he would kill him. Inside the restaurant, Sinks got into a firing stance and placed his hand on a gun inside his front pants pocket, a gun Sinks had borrowed from a friend the day before, and when Victim, who was

unarmed, reached to put his cell phone in his pocket, Sinks shot him five times including twice when Victim was on the ground.

The State charged Sinks with first-degree murder and armed criminal action and Sinks was convicted of both crimes after a bench trial. The trial court sentenced Sinks to life in prison without the possibility of parole for the murder and thirty years in prison for the armed criminal action and ordered the sentences to run consecutively. We affirmed the judgment and sentences in *State v. Sinks*, 652 S.W.3d 322 (Mo. App. E.D. 2022), after which Sinks brought this claim for post-conviction relief under Rule 29.15. Sinks now alleges the motion court clearly erred in denying his Rule 29.15 post-conviction relief motion without an evidentiary hearing in three points on appeal.

In point I, Sinks alleges trial counsel was ineffective for not moving to dismiss the charges against him at some point for a speedy trial violation after eight months had elapsed since his August 2, 2018 arrest and Sinks had still not stood trial and likewise that appellate counsel was ineffective for not raising this issue in Sinks' direct appeal. We disagree on both counts. Although the 977 days between Sinks' arrest and trial was presumptively prejudicial, Sinks never asserted his speedy trial right, the delay was for the most part caused by COVID-19, and Sinks suffered no prejudice.

In point II, Sinks alleges trial counsel was ineffective for advising him to waive his right to a jury trial which rendered his waiver unknowing, involuntary, and unintelligent. We deny this point because it was sound trial strategy to pursue a bench trial, and Sinks was fully advised of and understood the right he was waiving and he executed a written waiver of that right.

In point III, Sinks alleges trial counsel was ineffective for failing to pursue a plea agreement with the State. Because this was also sound trial strategy, Sink's argument is pure

2

speculation as the State never offered him a plea agreement, and there is no indication the trial court would have accepted one, we deny this point.

## Factual Background

Sinks and Ex-wife married in 1997 and divorced in 2002. They re-married in 2005, had a son in 2013, and again divorced in Spring 2018. Ex-wife began dating Victim soon after the 2018 divorce but did not tell Sinks until months later because Sinks had harassed and stalked a previous boyfriend. When Sinks found out about the relationship with Victim, he sent disparaging and threatening texts to Ex-wife about Victim. At one point, Ex-wife told Sinks that Victim would be in town in early August 2018 because Ex-wife and Victim planned to move to Ohio together with Sink's son and that Victim intended to have a "mutually respectful conversation with [Sinks]." Sinks responded that Ex-wife was "about to see what this real world is all about" and that "[a]ny interference [with Sinks' ability to see his son] will not be received well." Further, that Sinks would "do whatever it took" to prevent Ex-wife from moving.

Sinks continued to message Ex-wife about violent encounters he anticipated having with Victim. Sinks said he was "versed in all sorts of self-defense" and that "[a]s long as I can see my son regularly without interference…I have no issue." Ex-wife forwarded these texts to Victim.

Then occurred the murder detailed above. Police arrived at Hardee's shortly after and Sinks was compliant. During the detective's interview, Sinks admitted that he was upset about his divorce from Ex-wife and that his son could potentially be in contact with Victim's son because Sinks claimed Victim's son was a child molester. Sinks also admitted that he never saw a weapon on Victim's person or that Victim claimed to have a weapon.

*Trial*

In their testimony, Sinks and Victim's son painted markedly different pictures of the events leading up to the shooting. Sinks claimed that after he saw Victim inside the Hardee's, he returned to his car to retrieve the gun and came back inside. Further, he claimed that Victim threatened Sinks multiple times before Victim reached behind his back which caused Sinks to fear for his life. On cross-examination, Sinks admitted to a previous conviction for assaulting Ex-wife and that he habitually harassed Ex-wife about her romantic life. Sinks also admitted he told the police after the shooting that if they searched his phone they would find messages like "I hope [Victim] doesn't try me because if he tries me I will shoot him."

For his part, Victim's son testified Sinks' and Victim's conversation was initially calm then turned adversarial when Sinks said he had the right to carry a firearm and had a gun on him. More verbal back and forth included Victim suggesting they take their confrontation outside. Instead, inside the restaurant, Sinks then assumed a firing stance, displayed the gun, and shot Victim as Victim reached to put his hand into his pocket. Son testified that Victim did not have a gun.

Sinks' expert, a retired law enforcement officer, testified on use-of-force and opined that Victim was the aggressor because he insisted they go outside and then aggressively approached Sinks when Sinks initially declined to do so.

*Motion Court's Findings*

The motion court denied Sinks' allegations of ineffective assistance of counsel now raised in this appeal without an evidentiary hearing. The motion court found (a) that counsel's failure to assert a speedy trial violation was not ineffective and, regardless, Sinks was not prejudiced, and (b) that appellate counsel was not ineffective for raising this non-meritorious

4

claim on appeal. As to the jury trial issue, the motion court found Sinks' waiver voluntary and the result of sound trial strategy advice by counsel. And lastly, as to the plea bargain claim, Sinks did not request trial counsel seek a negotiated plea and since he maintained his innocence throughout this case, counsel was not ineffective for pursuing this all-or-nothing strategy.

**Standard of Review**

We review a denial of a Rule 29.15 motion for post-conviction relief only to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Swallow v. State*, 398 S.W.3d 1, 10 (Mo. banc 2013). Findings and conclusions are clearly erroneous only when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Swallow*, 398 S.W.3d at 3. The motion court's findings should be upheld if they are sustainable on any ground. *Id.* And we presume that the motion court's findings are correct, including the motion court's determinations as to the credibility of witnesses. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019).

To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must meet the two-pronged *Strickland* test. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). The movant must prove by a preponderance of the evidence (1) that counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney; and (2) that as a result thereof, the movant was prejudiced. *Yates v. State*, 679 S.W.3d 592, 597 (Mo. App. E.D. 2023).

To succeed on the performance prong, the movant must overcome a strong presumption that counsel's performance was reasonable and effective by showing specific acts or omissions that, under the circumstances, fell outside the wide range of effective assistance. *Anderson*, 564 S.W.3d at 600. To satisfy the prejudice prong, the movant must show that there is a reasonable

probability that, but for counsel's alleged errors, the outcome would have been different. *Id.* If the movant fails to establish either prong, "then we need not consider the other and the claim of ineffective assistance must fail." *Roberts v. State*, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).

**Discussion**

*Point I*

First, Sinks' allegation regarding the supposed speedy trial violation. "To prevail on a claim of ineffective assistance of counsel based on counsel's failure to file a motion to dismiss for violation of the right to speedy trial, a movant must demonstrate that, had counsel filed such a motion, the trial court would have dismissed the case for failure to comply with speedy trial requirements." *Giammanco v. State*, 416 S.W.3d 833, 839 (Mo. App. E.D. 2013).

"[T]he speedy trial right exists primarily to protect an individual's liberty interest, 'to minimize the possibility of lengthy incarceration prior to trial … and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.'" *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 728 (Mo. banc 2007) (quoting *United States v. Gouveia*, 467 U.S. 180, 190 (1984)). "The United States and Missouri Constitutions provide equivalent protection for a defendant's right to a speedy trial." *Id.* at 729. When assessing whether a defendant's right to a speedy trial has been violated, the court must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* (internal citations omitted).

A.      *Length of the Delay*

"The first factor … is a "triggering factor." *State v. Oliver*, 655 S.W.3d 407, 416 (Mo. App. E.D. 2022). "[U]ntil there is a delay that is presumptively prejudicial, there is no need to inquire into the other factors." "The delay in bringing a defendant to trial is measured from the

6

time of the arrest, not from the time that the right is first asserted." *Riley*, 240 S.W.3d at 729. "Missouri courts have held that delays longer than eight months are presumptively prejudicial to the defendant." *Id*.

Because 977 days passed between Sinks' arrest and trial, the delay here was presumptively prejudicial such that we proceed to analyze the three remaining factors.

## B. *Reason for the Delay*

A deliberate attempt to delay the trial by the State will be heavily weighted against it. *Oliver*, 655 S.W.3d at 417 (quoting *Barker v. Wingo*, 407 U.S. 514, 533 (1972)). "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily [against the State] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government[.]" *Id*. "[D]elays attributable to the defendant weigh heavily against the defendant." *Id*. (citations omitted). "[D]elays attributable to the COVID-19 pandemic should generally not be weighed against either party." *Id*.

There is no indication the State deliberately tried to delay Sinks' trial. Sinks' case was set for trial on October 16, 2019 and delayed to May 12, 2020. We weigh this delay against the State, but not heavily because there is no indication the State acted deliberately to delay Sinks' trial only that it resulted from the normal functioning and docketing of the court. Then, two months before the May 2020 setting, COVID-19 pushed the trial to October 28, 2020. COVID-19 again delayed Sinks' trial to April 6, 2021. These pandemic-related delays are neutral.

## C. *Sinks' Assertion of his Right*

"There is no rigid requirement regarding when a defendant must assert his right to a speedy trial." *Oliver*, 655 S.W.3d at 420. "In evaluating a defendant's assertion, courts weigh the timeliness of the assertion and the frequency and force of defendant's objections." *Id*.

7

Because Sinks did not assert his right to a speedy trial, this factor weighs against him. Moreover, Sinks has not alleged here *when* between the time of his arrest and the time of trial he would have asserted this right had he been advised of it. This makes it indiscernible whether the trial court would have granted a motion to dismiss. Similarly, the other considerations, such as how many times Sinks asserted his right, are wholly absent. (*See Barker*, 407 U.S. at 532 "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.")

D.      *Prejudice*

"[W]hether delay resulted in prejudice to the defendant is the most important factor." *Estes*, 659 S.W.3d at 662. "The defendant has the burden of demonstrating prejudice and '[c]laims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient.'" *Id*. (quoting *State v. Wright*, 551 S.W.3d 608, 620 (Mo. App. E.D. 2018)). We consider (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. *Id*. The third consideration is the most serious. *Id*.

Sinks claims prejudice while in Cape Girardeau jail because he was assaulted there, witnessed other assaults among inmates, was prescribed medicine for his mental health, was diagnosed with diabetes, and became estranged from his two children. We are unpersuaded. Sinks does not provide authority that these are the type of allegations that would have entitled him to dismissal of the charges against him and these accusations appear to be the types of anxieties and concerns that might accompany the pre-trial incarceration in any criminal case. *See Oliver*, 655 S.W.3d at 421. Absent here is any indication that these matters impaired his defense which is the most important consideration in our analysis of this factor.

8

We conclude therefore that Sinks has failed to demonstrate that trial counsel was ineffective for not moving to dismiss on speedy trial grounds. It follows, therefore, that appellate counsel was also not ineffective for not raising this meritless claim on appeal. *See Smith v. State*, 467 S.W.3d 303, 309 (Mo. App. S.D. 2015). Point denied.

*Point II*

Next, Sinks' waiver of his right to a jury trial. "The decision to waive a jury trial [is] a matter of trial strategy and consequently does not provide a basis for post-conviction relief." *Roberts v. State*, 356 S.W.3d 196, 206 (Mo. App. W.D. 2011) (quoting *Smith v. State*, 837 S.W.2d 25, 28 (Mo. App. W.D. 1992)). "[R]easonable choices of trial strategy, no matter how ill fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Id.* at 207.

"The constitutions of the United States and Missouri both guarantee a defendant in a criminal case the right to a jury trial." *State v. Hilbert*, 663 S.W.3d 462, 466 (Mo. banc 2023); U.S. Const. amends. VI, XIV; Mo Const. art. 1, secs. 18(a), 22(a). "A defendant may waive this right with the consent of the court." *Id.* "[S]uch waiver by the defendant shall be made in open court and entered of record" and the waiver "must be knowing, voluntary, and intelligent." *Id.* "The best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right."[1] *Id.*

With the foregoing legal authorities in mind, we turn to the record in this case which refutes Sinks' claim that his waiver was involuntary and we find trial counsel made a

---

[1] In *State v. Baxter*, 204 S.W.3d 650, 653 (Mo. banc 2006), the Supreme Court held the record on appeal can establish a valid waiver even when the court does not personally question a defendant on the record about understanding the right he is giving up by foregoing a jury trial.

9

strategically sensible decision to recommend that Sinks proceed with a bench trial.  Sinks alleges trial counsel advised him to waive his right to a jury trial because (1) it would be easier to schedule during COVID-19; (2) counsel had demographic concerns regarding the likely jury pool; (3) in a bench trial, Sinks would have a better chance of a not guilty verdict and would benefit from counsel's professional relationship with the judge; (4) and Sinks would have a better chance of being convicted of the lesser included offenses if he was convicted at all.  Simply put, we find that counsel's strategic advice in this regard did not fall below the level of a reasonably competent attorney.  *See Roberts*, 356 S.W.3d at 206.

Moreover, after being so advised by counsel, the court advised Sinks on the record about the rights he was giving up by going forward with a bench trial and Sinks' testimony shows his waiver was voluntarily, knowingly, and intelligently made.  And then Sinks executed a written waiver which is the type of unmistakable waiver Missouri law requires and reflects the voluntariness of Sinks' waiver here.  *See Hilbert,* 663 S.W.3d at 466. Point denied.

*Point III*

Lastly, trial counsel's alleged failure to pursue a plea agreement.  "The decision to pursue an 'all-or-nothing defense has been consistently upheld as reasonable trial strategy." *Jones v. State*, 514 S.W.3d 72, 81 (Mo. App. E.D. 2017).

Much like the issue in point II, trial counsel's decision to not pursue a plea agreement was sound trial strategy.  Sinks' allegation is mere speculation as there is no indication the State would have offered Sinks a plea deal.  Further, we are uncritical of Counsel here - Sinks consistently maintained his innocence based on self-defense from the moment he shot Victim, and Counsel, in consultation with Sinks, appropriately chose to pursue that theory at trial.  Point denied.

*Denial without Evidentiary Hearing*

Inasmuch as the record before the motion court refuted each of Sinks' claims, the court properly denied Sinks an evidentiary hearing.   *Swallow*, 398 S.W.3d at 3.

## Conclusion

We affirm the motion court's decision to deny Sinks post-conviction motion without an evidentiary hearing.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Cristian M. Stevens, J., concur.