Ivan B. JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 73862.

Missouri Court of Appeals, Western District.

June 26, 2012.

Mark A. Grothoff, Columbia, MO, for appellant.

Shaun J. Mackelprang and Evan J. Buchheim, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES E. WELSH, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Ivan Johnson ("Johnson") appeals the denial of his Rule 29.15 motion following an evidentiary hearing. Johnson alleges that he was denied effective assistance of counsel because his trial counsel failed to register a hearsay objection to the testimony of a witness about the statement of another individual regarding Johnson's presence near the scene of a murder. Johnson claims that a timely hearsay objection would have been sustained and that the result of his trial would have been different. We affirm.

## Factual and Procedural History

Johnson was convicted in 2005 following a jury trial of first-degree murder and first-degree robbery in connection with the 2003 robbery and murder of John Wolff ("Wolff"). Johnson was sentenced to life imprisonment without the possibility of probation or parole on the murder charge and to a consecutive 20–year sentence on the robbery charge. Johnson's conviction was affirmed by this court's *per curiam* order on direct appeal. *State v. Johnson*, 219 S.W.3d 852 (Mo.App. W.D.2007). The relevant evidence supporting Johnson's conviction will be discussed as necessary in connection with our analysis of Johnson's claim on appeal.

Johnson timely filed a pro se Rule 29.15 motion for post-conviction relief. Appointed counsel timely filed an amended motion ("Motion"). In the Motion, Johnson raised several allegations of ineffective assistance of counsel. Pertinent to this appeal, Johnson claimed "[t]rial counsel was ineffective for failing to object to hearsay testimony." Specifically, the Motion alleged that trial counsel should have registered a hearsay objection to the testimony of Wayne Bridgewater ("Bridgewater") that David

Reynolds ("Reynolds")[1] told him that Johnson "admitted beating someone." According to Johnson, this testimony was inadmissible hearsay as it was Reynolds's out of court statement offered to prove its truth under circumstances where Reynolds was not subject to cross-examination. According to Johnson, Bridgewater's testimony was "decisive," "the most direct evidence in the entire trial," and "the only evidence connecting [Johnson] with [Wolff's] death."

The motion court conducted an evidentiary hearing on Johnson's Motion. The motion court ruled, as a matter of law, that "[t]rial counsel is not deemed ineffective for failing to make non-meritorious objections." The motion court also concluded that Johnson "failed to establish that this alleged error was so prejudicial that had an objection [been] made, the trial's outcome would have been different."

The motion court entered its judgment denying Johnson's Motion. Johnson filed this timely appeal.

## Standard of Review

■ Appellate review of a judgment overruling a post-conviction motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are "clearly erroneous." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow*, 21 S.W.3d at 822.

## Analysis

Johnson raises a single point on appeal. Johnson alleges that the motion court clearly erred in denying the Motion because trial counsel was ineffective for "fail-

---

1. Reynolds is Bridgewater's brother.

ing to object to the testimony of Wayne Bridgewater that his brother, David Reynolds, had told him that Reynolds drove [Johnson] to John Wolff's home in Ethel, Missouri and that [Johnson] entered Wolff's house for 10 to 15 minutes on the basis that it constituted improper testimonial hearsay." Johnson further claims that this failure was prejudicial because, had a hearsay "objection been made, a reasonable probability exists that the trial court would have sustained the objection, and without the improper hearsay testimony, the result of [Johnson's] trial would have been different." We disagree.

To establish ineffective assistance of counsel sufficient to support a claim that the Sixth Amendment right to counsel has been violated, Johnson must show both that trial counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney under similar circumstances; and that Johnson was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Barnett v. State,* 103 S.W.3d 765, 768 (Mo. banc 2003). To prove deficient performance, Johnson must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. This requires Johnson to establish by a preponderance of the evidence that trial counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. To conform to this evidentiary standard, Johnson must rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal quotations omitted).

To establish prejudice, Johnson must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a conviction following a jury trial, "the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

Before evaluating whether Johnson has sustained his burden to demonstrate both deficient performance and prejudice, we must first address the difference between the claim made by Johnson in his Motion and the claim asserted by Johnson on appeal. In the Motion, Johnson complained that trial counsel failed to register a hearsay objection to the testimony of Bridgewater that Reynolds told him that Johnson "admitted beating someone." On appeal, Johnson complains that trial counsel failed to register a hearsay objection to the testimony of Bridgewater that Reynolds told him that "Reynolds drove [Johnson] to John Wolff's home in Ethel, Missouri and that [Johnson] entered Wolff's house for 10 to 15 minutes." Though both complaints question trial counsel's failure to assert a hearsay objection, the Motion focuses on Johnson's alleged statement to Reynolds that was then repeated to Bridgewater, while this appeal focuses on Reynolds's statement to Bridgewater about Reynolds's own activities.

A post-conviction claim on appeal that materially differs from that alleged in a post-conviction motion preserves nothing for appellate review and is waived. *Clay v. State,* 310 S.W.3d 733, 736 (Mo.App. W.D.2010). This principle is in part a

function of the strict time constraints imposed on a movant's ability to seek post-conviction relief. *See* Rule 24.035(b); Rule 28.15(b). In fact, a motion court has no authority to hear an untimely Rule 24.035 or Rule 29.15 motion. *Dorris v. State,* 360 S.W.3d 260, 267–68 (Mo. banc 2012). The principle is also a function of the motion court's obligation to "issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held." Rule 24.035(j); Rule 29.15(j). Our review of an order sustaining or overruling a post-conviction motion is limited to "a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k); Rule 29.15(k). A claim first raised on appeal cannot be reviewed pursuant to this standard as no findings or conclusions have been made by the motion court regarding the claim.

■ Johnson's alteration of the precise aspect of Bridgewater's testimony on which he relies to complain that a hearsay objection should have been asserted implicates the aforesaid principle. Even if we could conclude that Johnson's general (and consistently asserted) complaint about trial counsel's failure to assert a hearsay objection is sufficient to avoid waiver of Johnson's specific complaint on appeal, Johnson faces another hurdle. We are unable to determine what portion of Bridgewater's testimony the motion court was reviewing when it rejected Johnson's claim of ineffective assistance of counsel. This is significant because a "defendant is limited to those claims of ineffectiveness raised *and litigated* in his *pro se* or amended post-conviction motion." *State v. Gray,* 926 S.W.2d 29, 34 (Mo.App. W.D.1996) (emphasis added).

During the hearing, trial counsel testified that he could not recall Bridgewater's testimony. When shown an unspecified portion of the trial transcript "where [Bridgewater] is talking about what … Reynolds said," trial counsel agreed that "his recollection as to what we're talking about as far as hearsay of David Reynolds" had been refreshed. Trial counsel went on to testify that "[a]t the beginning of [Bridgewater's] statement on that page," "Bridgewater did testify regarding some hearsay statements of Mr. Reynolds." Neither the page, nor the specific testimony is identified. When trial counsel was asked whether he recognized "the testimony" to be objectionable, trial counsel responded "[y]es. Or at least part of it." Post-conviction counsel asked "[w]ell which part are you talking about?" Trial counsel responded "[a]t the top of the page in that paragraph, the question was going to what Mr. Johnson said to Mr. Bridgewater. And so in the course of relating what Mr. Johnson supposedly said to Mr. Bridgewater, he does discuss some—has a discussion—he does discuss a conversation that he had with his brother."

The motion court concluded that "[t]he portion of the testimony of Wayne Bridgewater that [Johnson] now claims should have been objected to was admissible was [sic] a tacit admission of a party opponent and also would constitute a co-conspirator's statement." We cannot tell from this finding, or otherwise from the record, whether the motion court was referring to the testimony raised in the Motion (that Bridgewater testified that Reynolds told him that Johnson claimed to have beaten someone), or the testimony raised on appeal (that Bridgewater testified that Reynolds told him he drove Johnson to Wolff's house). Thus, we have no way of confirming whether we are reviewing a matter that was considered by the motion court, and on which findings of fact and conclusions of law were made.

It is Johnson's burden to establish that he has not waived his right to assert a

post-conviction claim, and/or that his claim asserted on appeal was, in fact raised and litigated in the proceedings before the motion court. *Dorris*, 360 S.W.3d at 267. Johnson has not sustained this burden.

■ In any event, Johnson's complaint on appeal, even if preserved for our review, is without merit. The relevant portion of Bridgewater's testimony implicated by Johnson's point relied on is as follows:

Q: Now, what is it that [Johnson] related to you in this conversation or tell the jury what happened in the conversation?

A: I got, I had talked to my brother before, before [Johnson] called 'cause I knew [Johnson] had been talking about going over to John Wolff's house, robbing him and taking his money and stuff. And I had talked to my brother. *And then my brother said he took him over there and he went in the house and he was in there for about 10, 15 minutes or whatever. And so I got that from my brother.* And then *[Johnson] called* and I told [Johnson] if I did something I'd tell you about it, then I asked him about it 'cause I knew he planned on going over to the guy's house and robbing him or whatever. *And he told me he went over to the guy's house and he beat him and took his money so he could bond out of jail in Topeka, Kansas.*"

Q: That's what [Johnson] told you?

A: Yes.

(Emphasis added.)

■ Had a hearsay objection been made after Bridgewater testified "then my brother said . . . ," it likely would have been sustained. The motion court found as a matter of law, however, that trial counsel is not ineffective for failing to make an unmeritorious objection. The motion court correctly stated the law. "Counsel is not required to make non-meritorious objections, and 'counsel is not ineffective for failing to make nonmeritorious objections.'" *Williams v. State*, 205 S.W.3d 300, 305 (Mo.App. W.D.2006) (quoting *Worthington v. State*, 166 S.W.3d 566, 581 (Mo. banc 2005) (internal citation omitted)). Here, the failure to raise a hearsay objection was at best an "error" of technical proportion. Had a hearsay objection been made, the State would almost certainly have explained its intent to offer the statement by Reynolds not for its truth, but to explain Bridgewater's subsequent decision to confront Johnson about whether he robbed Wolff. Thus constrained, the statement would not have been hearsay. "[W]hen in-court testimony relating to an out-of-court statement is offered to explain the conduct of the witness who is testifying rather than as proof of the facts asserted in the statement, the testimony does not constitute hearsay." *State v. Washington*, 260 S.W.3d 875, 880 (Mo.App. E.D.2008); *see also*, *Clay*, 310 S.W.3d at 736 (finding no ineffective assistance of counsel for failing to assert an objection where it is "unlikely the objection would have been sustained, and/or it is unlikely the foundation necessary to overcome the objection could not have been laid"). Johnson has not sustained his burden to demonstrate that his trial counsel's performance was deficient.

■ In addition, Johnson cannot demonstrate prejudice. The import of Bridgewater's testimony related to his personal conversation *with Johnson*. A hearsay objection addressing Reynolds's statements would not have excluded Johnson's admission *to Bridgewater* that he went over to Wolff's house and robbed and beat him.[2]

---

2. The trial transcript indicates that Bridgewater also testified that Reynolds told him that

Johnson robbed Wolff of $1500. Curiously, though Bridgewater thus testified that John-

This testimony was admissible as an exception to the hearsay rule as an admission against interest. *Dixon v. State*, 763 S.W.2d 204, 207 (Mo.App. W.D.1988) ("[A]ny statement evincing 'a consciousness of guilt' is an admission against interest.") (citation omitted). The motion court correctly concluded that Johnson "failed to establish that this alleged error was so prejudicial that had an objection [been] made, the trial's outcome would have been different."

This conclusion is particularly appropriate in light of other substantial evidence of Johnson's guilt. For example, the evidence indicated that a hiking boot print was found at the scene of Wolff's murder attributable to a type and size of hiking boot sold at Wal–Mart—a size 13 Earth Brand Bandit hiking boot. Only 211 pairs of size 13 shoes of that model were sold in the State of Missouri between July 2003 (when the product was first offered for sale) and January 2004 (barely a month after Wolff's murder). Two months before the murder, Johnson was seen in a Wal–Mart in Macon carrying a shoe box. When he left the store without the shoe box, a store employee found the shoe box with a pair of old worn out sneakers inside. The size 13 Earth Brand Bandit hiking boots that had been inside the shoe box were gone. Johnson was wearing boots fitting this description at the time of his arrest in December, 2003. At his post-conviction evidentiary hearing, Johnson admitted that he stole the boots he was wearing at the time of his arrest from a Wal–Mart a few months before Wolff was murdered.[3]

Point denied.

son admitted to Reynolds that he "robbed" Wolff, Bridgewater *never* testified that Johnson told Reynolds that he "beat" Wolff, the purported hearsay testimony complained about in Johnson's Motion.

### Conclusion

The judgment of the motion court is affirmed.

All concur.

3. In addition, several other witnesses testified at trial in a manner which tied Johnson to the murder scene, to the general vicinity of Wolff's house, and to property missing from Wolff's house.